Grafton
No. 81-254

THE STATE OF NEW HAMPSHIRE

v.

DONALD PERRON

November 5, 1982

942

*Gregory H. Smith,* attorney general (*Martha V. Gordon,* assistant attorney general, on the brief, and *Gregory W. Swope,* attorney, orally), for the State.

*James E. Duggan,* of Concord, appellate defender, by brief for the defendant.

DOUGLAS, J. The defendant was tried and convicted by a jury in Superior Court (*Johnson*, J.) of second-degree assault, RSA 631:2 I (Supp. 1981), and robbery, RSA 636:1 I(a). He seeks reversal of his conviction on three grounds: (1) ineffective assistance of counsel for failure to seek exclusion of certain evidence and failure to preserve issues for appellate review; (2) improper admission of testimony to impeach the credibility of a defense witness; and (3) denial of speedy trial. For the reasons that follow, we affirm.

On the night of November 6, 1979, Robert O'Neil, a Dartmouth College student, was walking along North Main Street in Hanover when a car pulled up next to him. O'Neil continued walking, but the car followed him as he walked along and the passenger in the front seat yelled some names at him. O'Neil was asked whether he had any money, and he responded that he did not. While O'Neil was walking, he was looking at the man seated in the passenger seat in the front of the car. O'Neil later described the passenger as having fairly long dark hair, a mustache, and "scruffy growth" on his face. After the car followed O'Neil a little farther, the two occupants of the car jumped out and assaulted him, taking his wallet.

O'Neil made three identifications of the defendant, Donald Perron, as the passenger in the car who assaulted him. First, on November 17, 1979, the police showed O'Neil seventeen photographs, two of which were of the defendant. O'Neil identified both of them. Three days later, the defendant was arrested. The second identification occurred on December 4, 1979, in which O'Neil was shown sixteen photographs. O'Neil initially selected two photographs but ultimately chose that of the defendant as one of his assailants. The third identification took place on January 22, 1980, when O'Neil went to Hanover District Court accompanied by a police detective. Upon entering the courtroom, O'Neil saw the defendant seated among fifteen or twenty people in the spectator section and told the detective that the defendant was "the one that did it." The defendant waived his probable cause hearing.

The defendant was indicted in April 1980. That same month, the State filed a motion for a speedy trial. The case was scheduled for trial during the September 1980 term, but was continued on the State's motion because the victim, O'Neil, was studying in Europe during the fall 1980 semester.

The defendant moved to Pennsylvania in February 1981 and remained there until June 1981. The defendant filed his first speedy trial motion on June 1, 1981, and the case went to trial that same month.

Prior to trial, the defendant's then counsel filed a motion *in limine* to exclude the defendant's prior conviction for aggravated assault on

an eighteen-month-old child. The defendant was offered an opportunity for a hearing so that the alleged prejudicial effect of the conviction could be stated on the record but out of the jury's presence. *See State v. Staples*, 120 N.H. 278, 285, 415 A.2d 320, 324 (1980) (*Staples I*). Defense counsel rejected the opportunity, however, and withdrew the motion based on his client's decision not to testify on his own behalf.

The defendant was convicted of both second-degree assault and robbery and was sentenced to concurrent terms of one to three years and six to twelve years on the respective offenses. On appeal, the defendant initially moved to remand the case for a hearing on whether he had received effective assistance of counsel at trial. We denied the motion on January 6, 1982.

I. *Effective Assistance of Counsel.*

■■ Both the State and Federal Constitutions guarantee a criminal defendant the right to effective assistance of counsel. *State v. Staples*, 121 N.H. 959, 961, 437 A.2d 266, 267 (1981) (*Staples II*); *see* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. The constitutional standard by which we measure the performance of a lawyer in representing his client in a criminal case is "reasonable competence." *Staples II*, 121 N.H. at 961, 437 A.2d at 267: *see McMann v. Richardson*, 397 U.S. 759, 770 (1969); *see also Engle v. Isaac*, 102 S. Ct. 1558, 1574 (1982). The defendant claims that he was denied the effective assistance of counsel in three instances, which we will deal with separately.

The defendant's first ground for challenging the competence of his representation at trial is his lawyer's failure to obtain a ruling on the motion to exclude the defendant's prior aggravated-assault conviction. Initially, the trial judge deferred ruling on the motion until "defendant's counsel indicates that defendant proposes to take the stand."

■ The defendant now argues that this was an attempt by the trial judge to "extract a promise" from the defendant that he will testify in exchange for a ruling on the admissibility of a prior conviction. To the contrary, such a decision was merely an effort by the trial judge to save valuable judicial time by avoiding unnecessary hearings. The defendant's prior conviction would have been admissible, if at all, only for the purpose of impeaching his credibility during cross-examination, and the trial judge apparently saw no need to conduct a *Staples I* hearing on whether the prior conviction should be excluded if the defendant did not propose to take the witness stand. Undoubtedly, as the defendant suggests, he

would have had an incentive to testify had the court first ruled on the motion *in limine* and found the prior conviction to be inadmissible. Nevertheless, this question is not raised on a direct appeal but rather in a collateral proceeding challenging the adequacy of counsel. We hold only that trial counsel's decision not to pursue a *Staples I* hearing as to the admissibility of the prior conviction did not fall below the level of "reasonable competence."

The defendant further contends that defense counsel misrepresented to him the expected scope of questioning on cross-examination if he decided to testify. The record does not reflect whether the defendant, in deciding not to take the witness stand, thought his prior conviction would be admissible; however, the defendant on appeal seeks to rely on his handwritten waiver of the right to testify to support this argument. The waiver stated, in relevant part, that if he did testify "the court will allow full cross-examination of me including the details of my prior conviction."

The defendant argues that defense counsel erred by suggesting that the prior conviction had already been ruled admissible and that the facts of the prior conviction would be allowed into evidence. It is not at all clear on the record before us that the defendant's lawyer did so indicate to the defendant. Even though the defendant attested that he "understand[s]" he could be cross-examined about the details of his prior conviction, we cannot say that he made his decision not to testify for this reason and not for some other reason based on advice of counsel, such as his credibility. "[S]uccess in criminal trials and perfection in trial tactics are not guaranteed by the Constitution." *State v. Fleury*, 111 N.H. 294, 299, 282 A.2d 873, 877 (1971). We will not second-guess the tactical decisions of defense counsel.

The defendant's second basis for claiming denial of effective assistance of counsel was his trial lawyer's failure to move to exclude several allegedly suggestive photographic identifications and one corporeal identification without the presence of counsel. As previously mentioned, the first photo identification, on November 17, 1979, resulted in the victim, O'Neil, selecting two of the defendant's photographs from among seventeen. The defendant was the only person portrayed twice, but a police detective testified that the inclusion of a second photo was inadvertent.

In *State v. Leclair*, 118 N.H. 214, 385 A.2d 831 (1978), we announced the following standard governing the admissibility of a pre-indictment photographic identification:

"When an out-of-court identification is made before formal charges, and thus before the right to counsel

> attaches, its reliability and therefore its admissibility will be determined on the basis of the totality of the circumstances, and its exclusion will not be on the sole basis that the procedures were unnecessarily suggestive."

*Id.* at 217, 385 A.2d at 833. In a line of cases since *Leclair*, we have applied the factors enunciated in *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972), for determining whether a pre-indictment identification procedure used by the police was so suggestive as to taint any identification and render it inadmissible. These factors are: (1) the witness' opportunity to view the defendant at the time of the crime; (2) the degree of the witness' attention; (3) the accuracy of the description given by the witness; (4) the witness' level of certainty; and (5) the time between the crime and the confrontation. *See e.g.*, *State v. Gonzales*, 120 N.H. 805, 807–08, 423 A.2d 608, 610 (1980); *State v. Heald*, 120 N.H. 319, 322, 449 A.2d 1288, 1290–91 (1980); *State v. Gullick*, 120 N.H. 99, 101–02, 411 A.2d 1113, 1114–15, *cert. denied*, 449 U.S. 879 (1980). In *Gonzales*, applying the *Neil v. Biggers* criteria, we affirmed the trial court's finding that a photographic identification was reliable, notwithstanding the fact that only the defendant appeared twice in the pictorial lineup. 120 N.H. at 807–08, 423 A.2d at 609–10. Accordingly, we find no constitutional infirmity here.

■ The second photographic lineup, which occurred about three weeks after the first identification and subsequent to the defendant's arrest, involved sixteen photographs. O'Neil chose the defendant's photograph from the array. The defendant points out that nothing in the record suggests that any other people from the first photographic display appeared in the second photographic identification. Although we discourage such police procedures, we perceive no due process violation in the mere fact that he was the only individual to appear in both photographic lineups. *See People v. Spencer*, 22 Cal. App. 3d 786, 795, 99 Cal. Rptr. 681, 687 (1972) (defendant was only person to appear in both photographic and in-person lineups).

■ The defendant also bases his ineffective-counsel claim on the fact that O'Neil was shown a photograph of the defendant just a few days before trial. Although it is not clear whether O'Neil saw photographs of other persons, the defendant has not provided us with sufficient information to allow us to conclude that this photographic identification was constitutionally impermissible, given the two prior positive identifications. Therefore, we cannot conclude that it was unreasonable for the defendant's lawyer to fail to object to this photographic identification.

■■ The last identification which the defendant argues his trial counsel should have moved to suppress was an in-person identification occurring while he was awaiting his probable cause hearing in Hanover District Court on January 22, 1980. The record discloses that the defendant was represented by counsel at the time scheduled for the probable cause hearing, which was waived. Therefore, the defendant's reliance on *Moore v. Illinois*, 434 U.S. 220, 231 (1977), to support his contention that the corporeal identification should have been suppressed, is misplaced. Even if we were to hold the in-person identification invalid, the strength of O'Neil's identification of the defendant on the night he was assaulted, plus the previous valid photo identifications, render defense counsel's failure to seek exclusion of the corporeal identification harmless error.

The final ground for the defendant's ineffective-counsel contention is defense counsel's failure to except to the trial court's decision to admit, over his objection, the State's rebuttal evidence of bad character. One of the defendant's theories of defense at trial was that his character had changed considerably since his release from prison in the summer of 1979 and that it was unlikely that he committed the offenses in this case. The defense witnesses stated that the defendant's character changed after he met his girl-friend one week before the offense, and especially after he moved in with her *subsequent to* the offenses. To rebut this theory, the State made an offer of proof that a State trooper would testify that the defendant was intoxicated and had to be restrained during an incident in July 1979. Defense counsel objected and excepted to this proposed testimony, but the trial judge told counsel to make the objection during the actual testimony. At the proper time, counsel did object but failed to take an exception to the admission of the testimony. The defendant argues on appeal that the State's rebuttal evidence was inadmissible and that defense counsel's failure to except constituted ineffective assistance of counsel.

■■ ■■ The problem with this collateral attack by the defendant on his conviction is that he "opened the door" to the State's line of testimony by seeking to present evidence of his good character. *See State v. Ramos*, 121 N.H. 863, 866–67, 435 A.2d 1122, 1124 (1981). The fact that the defendant's evidence of good character was irrelevant to the offenses charged is immaterial to the trial judge's decision, within his discretion, to admit the State's evidence. *See State v. Thresher*, 122 N.H. 63, 71, 442 A.2d 578, 582 (1982). Defense counsel's initial objection and exception to the rebuttal testimony demonstrated his competence to raise the issue. Furthermore, the trial judge mitigated any potential prejudicial effect of the rebuttal

testimony by giving a limiting instruction to the jury not to consider it as evidence that the defendant committed the assault and robbery. Defense counsel's failure to take an exception does not always rise to the constitutional level of denial of effective assistance of counsel, and it does not in this case.

## II. *Admission of Impeachment Testimony.*

The second issue in this appeal is the trial court's admission of testimony to impeach the credibility of the defendant's mother, purportedly without a proper foundation. We find that any prejudice to the defendant from this testimony could have been mitigated if defense counsel had taken up the trial judge's invitation to lay a proper foundation afterwards. In addition, defense counsel's vigorous cross-examination of the State's impeachment witness substantially reduced whatever prejudicial impact such testimony may have had. We therefore find no merit to this contention.

## III. *Speedy Trial.*

The defendant's third claim on appeal is that he was denied his right to a speedy trial. *See* N.H. CONST. pt. I, art. 14; U.S. CONST. amends. VI, XIV. Since *State v. Blake*, 113 N.H. 115, 122, 305 A.2d 300, 305 (1973), we have followed the United States Supreme Court's speedy-trial analysis in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *See, e.g., State v. Quinlan*, 122 N.H. 51, 52, 440 A.2d 13, 14 (1982); *State v. Little*, 121 N.H. 765, 773, 435 A.2d 517, 521 (1981); *State v. Weitzman*, 121 N.H. 83, 86, 427 A.2d 3, 5 (1981). Any undue delay between the time of arrest or indictment and the time of trial is measured in terms of the length of the delay, the reasons for the delay, whether the defendant asserted his right, and any prejudice to the defendant.

The nineteen-month delay between the defendant's arrest and his trial can be broken down into three distinct periods: the ten-month period from November 1979 (arrest) to September 1980 (victim's departure for Europe to study); the three months during the fall of 1980 (victim studying in Europe); and the six-month period thereafter (victim's return to United States to date of trial). *See State v. White*, 116 N.H. 687, 688–89, 366 A.2d 872, 873–74 (1976). During the first period, the State moved in April 1980 for a speedy trial, apparently anticipating O'Neil's fall semester of study outside the country. When the State's motion was not granted, it was forced to move for a continuance of the trial.

The reason for the delay of the defendant's trial at least until January 1981 was the victim's voluntary absence from the United

States, and not because of "a deliberate delay sought by the prosecution." *State v. McMillan*, 115 N.H. 268, 270, 339 A.2d 21, 22 (1975). "The right to a speedy trial is necessarily relative and must be considered with regard to the practical administration of justice." *State v. Novosel*, 120 N.H. 176, 183, 412 A.2d 739, 745 (1980).

 This court puts substantial emphasis on the last two of the factors enunciated in *Barker*—whether the defendant asserted his right and the prejudice to the defendant. *State v. Cole*, 118 N.H. 829, 831, 395 A.2d 189, 190 (1978). In light of these factors, the defendant's failure to assert his right to a speedy trial until nineteen months after his arrest, and the fact that his case went to trial immediately thereafter, weigh heavily against him. *See State v. Dufield*, 119 N.H. 28, 30, 398 A.2d 818, 819 (1979).

 The only prejudice that the defendant, who was free on bail, can cite specifically is his being "subject to the call of the court." While we pointed to this as an example of prejudice in *State v. Cole*, 118 N.H. at 831, 395 A.2d at 190, we did so in the context of a *misdemeanor* case pending for fourteen months, where the defendant had been diligent in asserting his right to a speedy trial. By contrast, the defendant here was charged with two felonies and was less than diligent in asserting his right. The defendant refers us only generally to instances in the record where witnesses' memories had failed or dimmed, without explaining the prejudicial effect of such memory lapses. We conclude that the defendant was not denied his constitutional right to a speedy trial.

We note that the superior court has recently adopted speedy-trial policy guidelines, effective April 1, 1982. *See* 9 N.H.L.W. 121, 127 (1982). In cases where the defendant is not incarcerated, a show-cause hearing will be scheduled for misdemeanors pending for six months from date of entry and for felonies pending nine months from date of indictment. At that hearing, the trial judge, applying the principles of *Barker*, will decide whether to dismiss the case for lack of speedy trial. The same show-cause hearing will be scheduled for misdemeanor and felony cases after four months from date of entry or indictment where the defendant is incarcerated. This new speedy-trial policy as well as the monitoring system implemented on September 1, 1982, are expected to result in a more regulated and expedited review of the time within which a criminal defendant is brought to trial, without placing the onus on the defendant to assert a fundamental constitutional right. The policy does not, and is not

intended to, result in mandatory dismissal of cases merely because they may exceed the guideline time frames.

*Affirmed.*

All concurred.