Grafton
No. 82-286

THE STATE OF NEW HAMPSHIRE

v.

DAVID GUARALDI

October 26, 1983

94

*Gregory H. Smith,* attorney general (*Martha V. Gordon,* assistant attorney general, on the brief and orally), for the State.

*Peter Karl Marsh,* of Concord, and *Alfred Paul Farese,* of Everett, Massachusetts (*Mr. Marsh* on the brief, and *Mr. Farese* orally), for the defendant.

BATCHELDER, J. The defendant David Guaraldi was indicted in June 1981 by the Grafton County Grand Jury on two charges of aggravated sexual assault. RSA 632-A:2, X (Supp. 1981). The indictments accused the defendant of having engaged in fellatio on

two occasions with a minor boy (the victim). After a jury trial before the Grafton County Superior Court (*Johnson,* J.), the defendant was found guilty on both indictments. The defendant appeals from both convictions, asserting that the trial court erred in failing to instruct the jury on the defendant's theory of defense, and that he was denied the effective assistance of counsel. For the reasons set forth below, we affirm.

The facts adduced at trial establish that in late January of 1981 the victim in this case and his twin brother were placed in a group home in Canaan, New Hampshire, known as "Fort Courage." At the time of their placement, the twins were fifteen years old and were in the custody of the division of welfare. From September 1980 through May 1981, Fort Courage operated as a group home under permits from the division of welfare. Thomas Guaraldi was the director of Fort Courage, and the defendant, who first met Thomas Guaraldi in 1978 and who later adopted his surname, was the assistant director.

Sometime in February 1981, the twins were called downstairs during the evening from their bedroom at Fort Courage to the office. In the office, the defendant and Thomas Guaraldi initiated a frank discussion of the past sexual activities of the twins. Following this discussion, the defendant and the victim went into the bedroom, which the defendant shared with Thomas Guaraldi. In the bedroom, the defendant and the victim engaged in fellatio with each other. After this encounter, the defendant gave the victim a typed letter dated February 14, 1981, on which were rhymed lines, expressing the defendant's love for the boy. The letter was signed "Love, Lebeau." Lebeau was the nickname the boys at Fort Courage gave to the defendant.

On another occasion, in May 1981, the defendant came to the victim's bedroom while the latter was sleeping. The defendant awoke him, and they went into the bathroom, where they engaged in fellatio with each other.

The defendant's first ground for appeal concerns the trial court's refusal to charge the jury that its evaluation of the testimonial evidence should include consideration not only of whether a witness was deliberately untruthful, but also of whether the witness' testimony failed to conform to the facts due to inaccuracy or mistake. Defense counsel, at the close of the trial court's charge, requested the court to elaborate in this way on its standard charge on the credibility of witnesses, arguing that this was not an ordinary case. Defense counsel pointed to the fact that the State's chief witnesses, the twins, were the subject of competency hearings prior to trial.

On appeal, the defendant states that these hearings showed that the twins suffered from developmental impairments and that evidence adduced at trial established that the twins had a number of prior homosexual encounters. From this, the defendant theorizes that the victim's testimony, although not deliberately untruthful, was inaccurate and mistaken due to the victim's having fantasized or distorted the events. We note that this interpretation of the victim's testimony was the basis of the defendant's theory of the case, as developed by counsel at trial and argued to the jury on closing. The defendant argues that the trial court committed reversible error in failing to give the requested instructions, because the law is well settled that a criminal defendant is entitled to a jury instruction as to his theory of defense.

In *State v. Aubert*, 120 N.H. 634, 421 A.2d 124 (1980), we held that: "A requested charge on a party's theory of defense must be given if such theory is supported by some evidence." *Id.* at 635, 421 A.2d at 125. The defendant herein, however, mischaracterizes his theory of the case as a theory of defense. *See State v. Fennelly*, 123 N.H. 378, 390, 461 A.2d 1090, 1096–97 (1983). The credibility of a witness is not a "defense" to a criminal charge, as that term is employed in *Aubert* and in the New Hampshire Criminal Code. *See, e.g.*, RSA 626:3 (ignorance or mistake as defense); RSA 626:5 (entrapment as defense); RSA 626:6 (consent as defense); RSA 626:7 (defenses and affirmative defenses); RSA 627:1 (Supp. 1981) (justifiable conduct as defense); RSA 628:1 (immaturity as defense); and RSA 628:2 (insanity as defense). A criminal defense, rightly understood in this context, resembles what is accomplished in civil law by a plea of confession and avoidance: The defendant raising such a defense admits the substance of the allegation but points to facts that excuse, exonerate or justify his actions such that he thereby escapes liability.

In *Aubert*, the defendant stated that the shooting in question was an accident. Through the defense of accident, the defendant admits the act in question took place but seeks to escape criminal liability for that act because it was not accompanied by a culpable mental state. In contrast, here the defendant's theory of the case was that he did *not* engage in the acts in question, and that the reason why the purported victim says the defendant *did* engage in them is that the victim is somehow perceptually impaired.

The defendant competently urged this theory of the case in closing argument. The trial court's instructions on the credibility of witnesses was adequate and left the defendant ample opportunity to argue his version of the events. We hold that the trial court did not

commit reversible error when it refused to elaborate on its instructions as requested.

The defendant's second ground for appeal is his contention that he was denied the effective assistance of counsel. In support of this contention, the defendant points to specific instances of alleged incompetence and to their cumulative effect.

The defendant first points to trial counsel's failure to secure or attempt to secure the testimony of Robert Spector, the placement caseworker for the division of welfare, who first brought the twins to Fort Courage. Spector's testimony, it is alleged, would have tended to exculpate the defendant and would have tended to show that the victim's allegations were made in retaliation for the defendant's having pointed out to Spector that the victim was sexually "acting out" with other boys at the home. Further, the defendant states in his brief that there was no appreciable risk in calling Spector as a witness.

We granted the State's motion, to which there was no objection, to expand the record on appeal by submitting the resumes of the defendant's trial counsel and an affidavit from lead counsel concerning the defendant's allegations regarding Spector. The resume indicates that lead counsel was a prosecutor for Suffolk County in Massachusetts from 1963 to 1972, that from 1972 to the present he has been engaged in criminal defense work, and that he has never been the subject of any disciplinary action. The affidavit contradicts the defendant's allegations: Counsel did contact Spector because he originally thought Spector should be called as a defense witness, and Spector was willing to come to New Hampshire voluntarily to testify as a defense witness; but when the defendant was informed by counsel of all the information known to Spector, the defendant agreed with him that Spector should not be called as a defense witness.

 Both the State and Federal Constitutions guarantee a criminal defendant the right to effective assistance of counsel. *State v. Staples*, 121 N.H. 959, 961, 437 A.2d 266, 267 (1981). The constitutional standard by which we measure the performance of a lawyer representing his client in a criminal case is "reasonable competence." *State v. Perron*, 122 N.H. 941, 946, 454 A.2d 422, 424 (1982); *State v. Staples, supra* at 961, 437 A.2d at 267. "[S]uccess in criminal trials and perfection in trial tactics are not guaranteed by the Constitution," *State v. Fleury*, 111 N.H. 294, 299, 282 A.2d 873, 877 (1971), and "[w]e will not second-guess the tactical decisions of defense counsel," *State v. Perron*, 122 N.H. at 947, 454 A.2d at 425.

■ Based on the uncontroverted affidavit of lead trial counsel, the decision not to call Spector may be deemed an informed tactical decision, with which the defendant concurred and of which, therefore, he will not now be heard to complain.

A second basis for the defendant's claim of ineffective assistance of counsel is trial counsel's failure to file any written requests for jury instructions. The defendant points to three categories of instructions which arguably could have been requested to the defendant's advantage: (1) an instruction amplifying the credibility issue, designed to minimize the weight of the victim's testimony; (2) an instruction muting any adverse effect on the defendant of pretrial publicity; and (3) an instruction highlighting the difficulty of defending a rape charge.

■ ■ Written requests for jury instructions must be submitted prior to the drawing of the jury. SUPERIOR COURT RULE 62 H. The reason for requiring this timely submission is obvious: the trial court needs ample time to review suggested instructions to decide whether they should be included in its charge. While there is no absolute duty on the part of defense counsel to submit such written requests, the most vigorous defense necessarily entails attempting, on appropriate occasions, to exert as much favorable influence on the trial court's charge as is proper. *See generally*, ABA STANDARDS FOR CRIMINAL JUSTICE 15-3.6(d). When to press for an advantage, and when not to, is often a matter of tactics.

■ After reviewing the trial court's instructions in their entirety, we conclude that they were proper and fairly placed the burden on the State. With reference to the issue of pretrial publicity, we note that the trial court gave ample attention throughout the proceedings to the issues of prejudice and media influence. We also note that courts have been cautious concerning the propriety of an instruction to the effect that sexual assault is easy to allege and difficult to disprove. *See, e.g., United States v. Bear Ribs*, 562 F.2d 563, 565 n.4 (8th Cir.), *cert. denied*, 434 U.S. 974 (1977). We are not, therefore, prepared to question the competence of trial counsel for failing to provide the court with written requests for jury instructions, desirable as they may be.

As a third basis for his argument concerning ineffective assistance of counsel, the defendant points to his trial counsel's failure to file a motion for an order that the twins submit to psychiatric examinations prior to the hearings on their competency to testify. The defendant credits trial counsel for raising the issue of competency but faults them for not conducting a thorough pretrial investigation

relative to the competency of the twins, by obtaining expert opinion on that issue.

■■ In weighing the merit of this argument propounded by the defendant, we note the difficult burden defense counsel bears in such a situation. As we stated in *State v. Boisvert*, 119 N.H. 174, 400 A.2d 48 (1979):

> "There must be compelling reasons to require a psychiatric examination of a complaining witness in a sexual assault case. Only when the defendant has produced substantial and convincing evidence at an on-the-record pretrial hearing that impugns the complaining witness' psychological stability and testimonial credibility may a trial judge in the exercise of sound discretion properly grant a motion requesting such an examination."

*Id.* at 178, 400 A.2d at 51; *see also State v. Scarlett*, 121 N.H. 37, 426 A.2d 25 (1981). If defense counsel were successful in his motion, he still would have had the same substantial burden of convincing the trial judge, after hearing the twins testify at the competency hearing, that they lacked both the capacity to observe, remember, and narrate events and an understanding of the duty to tell the truth. *See State v. St. John*, 120 N.H. 61, 62, 410 A.2d 1126, 1127 (1980); *State v. Keyes*, 114 N.H. 487, 490, 322 A.2d 615, 617 (1974). Mindful of these difficult hurdles and the evidence adduced at the competency hearings, we conclude that trial counsel could properly, in the exercise of his judgment, have decided not to pursue an order subjecting the twins to psychiatric examination.

■ Finally, after examining trial counsel's performance as a whole, we hold that the defendant was not deprived of the effective assistance of counsel.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.