Donald B. **PERRON**, Petitioner, Appellant,

v.

Everett I. **PERRIN**, Jr., **Warden**, New Hampshire State Prison, Respondent, Appellee.

No. 83–1795.

United States Court of Appeals, First Circuit.

Argued March 5, 1984.

Decided Aug. 27, 1984.

Jon Meyer, Manchester, N.H., by appointment of the Court, with whom Backus, Shea & Meyer, Manchester, N.H., was on brief, for petitioner, appellant.

Andrew L. Isaac, Asst. Atty. Gen., Concord, N.H., with whom Gregory H. Smith, Atty. Gen., and Edna M. Conway, Atty., Crim. Justice Div., Concord, N.H., were on brief, for respondent, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and GIERBOLINI,* District Judge.

GIERBOLINI, District Judge.

Petitioner appeals from an order of the U.S. District Court for the District of New Hampshire dismissing his petition for a writ of habeas corpus for failure to show that he had been denied effective assistance of counsel and that he had been deprived of his right to a speedy trial. We affirm.

At approximately 8:30 p.m. on November 6, 1979, Robert D. O'Neal, a Dartmouth undergraduate, was beaten and robbed near the center of the Dartmouth College campus. Subsequently, petitioner Donald Perron was arrested and indicted on charges of second degree assault and robbery. After a jury trial, petitioner was sentenced to six to twelve years on the robbery charge and to one-and-a-half to three years on the second degree assault charge. His convictions were upheld by the New Hampshire Supreme Court in *State v. Perron,* 122 N.H. 941, 454 A.2d 422 (1982), where he raised the issues of ineffective assistance of counsel and denial of speedy trial.

In March 1983, petitioner filed a writ of habeas corpus before the United States District Court for the District of New Hampshire and requested to proceed *in forma pauperis.* In approving the request to proceed *in forma pauperis,* the district court ruled that petitioner had exhausted his state remedies as required by 28 U.S.C. § 2254(b) for these same issues were considered and decided by the New Hampshire Supreme Court. On April 30, 1983 the district court granted the state's motion to dismiss the petition and summarily denied the motion for reconsideration. Thereafter, it granted petitioner's request for certification of probable cause and the present appeal ensued.

At the outset, petitioner argues that the district court erred in determining, without a hearing, that he had been denied effective assistance of counsel.

■ This court said in *Lemire v. McCarthy,* 570 F.2d 17 (1st Cir.1979), that a district court must take additional evidence in a petition for habeas corpus if "the rele-

tion.

vant facts were not reliably determined by the state court or are incapable of reconstruction from the record." 570 F.2d at 19. *See also Guice v. Fortenberry,* 661 F.2d 496, 498 (5th Cir.1981), *reh'g granted,* 642 F.2d 98, *appeal after remand,* 722 F.2d 276 (1984), *reh'g denied,* 726 F.2d 752; *Johnson v. Estelle,* 704 F.2d 232, 239 (5th Cir.1983), *reh'g denied,* 711 F.2d 1054, *cert. denied,* — U.S. —, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984); *Ross v. Hopper,* 716 F.2d 1528, 1536 (11th Cir.1983). In the present case the material facts underlying petitioner's ineffective assistance claim are capable of reconstruction from the state trial record, and we find that petitioner was provided a full and fair opportunity to ventilate before the state court all the issues presented before the United States District Court.[1] In evaluating trial counsel's performance the district court properly relied on the trial transcript and the conclusions of the New Hampshire Supreme Court in *State v. Perron.* An evidentiary hearing was unnecessary. Moreover, it appears that none was ever requested.

■ We shall now proceed to review petitioner's argument that he was denied effective assistance of counsel bearing in mind our duty "to accord a presumption of correctness to state-court findings of fact." *Sumner v. Mata,* 455 U.S. 591, 592, 102 S.Ct. 1303, 1304, 71 L.Ed.2d 480 (1982).

Over the years, the Supreme Court has repeatedly recognized the sixth amendment right to counsel, and its necessity to protect the fundamental right to a fair trial, *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938), *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1965), but had never promulgated a test to guide circuit and district courts in their determinations as to whether the right has been done violence. Until now all federal courts of appeals agreed that the criterion to be ap-

plied in ineffectiveness claims was reasonably competent assistance. *See United States v. Bosch,* 584 F.2d 1113 (1st Cir. 1978); *Trapnell v. United States,* 725 F.2d 149 (2d Cir.1983); *Moore v. United States,* 432 F.2d 730 (3rd Cir.1970) (en banc); *Marzullo v. Maryland,* 561 F.2d 540 (4th Cir. 1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978); *Caraway v. Beto,* 421 F.2d 636 (5th Cir.1970) (per curiam); *Beasley v. United States,* 491 F.2d 687 (6th Cir.1974); *United States ex rel. Williams v. Twomey,* 510 F.2d 634 (7th Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975); *United States v. Easter,* 539 F.2d 663 (8th Cir.1976); *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir. 1978), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979); *Dyer v. Crisp,* 613 F.2d 275 (10th Cir.) (en banc), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980); *Douglas v. Wainwright,* 714 F.2d 1532 (11th Cir.1983); *United States v. De Coster,* 487 F.2d 1197, 1202 (D.C.Cir.1973).

In *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court clearly set forth the standard for determining effective assistance of counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at —, 104 S.Ct. at 2064; *United States v. Cronic,* — U.S. —, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The Court reasoned that the well established right to counsel played a crucial role in the adversarial system embodied in the sixth amendment. Indeed, without access to counsel's skill and knowledge defendants would effectively be denied "the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland,* — U.S. at —, 104 S.Ct. at 2063, citing *Adams v. United States ex rel.*

---

1. This is not a case like *United States v. McGuire,* 600 F.2d 330 (1st Cir.1979), where the factual findings were not disclosed in the exist-

ing record and a hearing was required before petitioner's ineffective assistance claim could be adequately considered.

*McCann,* 317 U.S. 269, 275, 276, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942).

To determine whether assistance of counsel was in actuality so defective as to warrant reversal, the Court formulated a two-pronged test. The criminal defendant must prove first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense thus depriving him of a fair trial. *Strickland,* —— U.S. at ——, 104 S.Ct. at 2064.

■■■ The proper standard for judging attorney's performance is that of reasonably effective assistance, taking into consideration all the circumstances. A convicted defendant must show that counsel made errors so serious that counsel's representation fell below an objective standard of reasonableness. In cases where it does, criminal defendants would not have received a fair trial.

■■■ The Court emphasized that judicial scrutiny of counsel's performance must be highly deferential. It confirmed the rule in this circuit that reviewing courts shall not use the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. *Id.* at ——, 104 S.Ct. at 2065; *see United States v. Pasarell,* 727 F.2d 13 (1st Cir. 1984); *United States v. Ortiz Oliveras,* 717 F.2d 1 (1st Cir.1983). Instead, after the defendant has identified the acts or omissions of counsel alleged to be ineffective, the reviewing court must reconstruct the circumstances of counsel's conduct and evaluate it from counsel's perspective at the time. Because of the difficulties inherent in making such evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland,* —— U.S. at ——, 104 S.Ct. at 2065.

■■■ With regard to the second prong, "[i]t is not enough for the defendant to show that [counsel's] errors had some conceivable effect on the outcome of the proceeding." *Strickland,* —— U.S. at ——, 104 S.Ct. at 2067.[2] Defendant bears the heavier burden of affirmatively showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ——, 104 S.Ct. at 2068. In making the above determination a court hearing an ineffective assistance claim must consider the totality of the evidence before it.

■■■ In short, the appropriate inquiry in ineffective assistance claims focuses on the adversarial process. If counsel is a reasonably effective advocate, and has not substantially prejudiced his client, he has met the constitutional standards.

The instant petition is based on several grounds. We will discuss them *seriatim.*

### 1. *Failure to secure a ruling on motion in limine and related claims.*

Petitioner's main allegation of ineffective assistance was that defense counsel failed to secure a decision on a motion *in limine* to prohibit the state from using details of a prior conviction if petitioner took the stand to testify on his own behalf. Petitioner argues that counsel improperly advised him that if he took the stand, he would be subject to cross-examination with respect to those details, and consequently, he gave up his right to testify on his own behalf.

Petitioner filed a motion *in limine* two days prior to trial wherein he sought to prohibit the state from raising on cross-examination the details of his prior conviction of aggravated assault upon an eighteen-month old child. No objection was made to the mere fact of the felony conviction and subsequent confinement being presented to the jury.

---

**2.** The test promulgated by the Court does not establish mechanical rules. The inquiry must be on the fundamental fairness of the proceedings challenged. Therefore, a court need not consider counsel's performance first and then proceed to determine whether prejudice occurred. If it is easier to dispose of a claim on the ground of lack of prejudice, that course should be followed. *Strickland,* —— U.S. at ——, 104 S.Ct. at 2069.

At the commencement of petitioner's case, his counsel requested a ruling on the motion *in limine* and the court responded that a hearing outside the presence of the jury would be held in the afternoon, provided his client would be testifying.[3] After discussions with his client, defense counsel stated: "I have ... advised my client fully as to his right to testify and his right not to testify and we discussed the scope of cross-examination which would be allowed if he did testify, and he has chosen not to testify."

In the affidavit in support of this motion petitioner stated: "My attorney informed me that the court would not rule on the motion *in limine* unless I first appeared on the witness stand. That I further understood from my attorney that the motion *in limine* would probably be denied and that if I took the witness stand and it was denied the court would allow full cross-examination of me including the details of my prior conviction."

The district court acknowledged that defense counsel should have demanded a ruling on petitioner's motion *in limine* but, in so doing, suggested that failure to do so was of little significance since the court would have denied it anyway.

Petitioner argues that while the fact of his aggravated assault conviction would have been admissible for impeachment purposes, further details of the offense would not have been admissible, either substantively or to test his credibility, since in either event their prejudicial effect would outweigh their probative value. Petitioner, however, has done little to explain precisely what "details" he wished to have excluded and whether any of these were revealed in his record of conviction. Even had all "details" been excluded, the admission of a prior conviction for aggravated assault in a case of this nature would obviously have been extremely detrimental.

According to N.H.Rev.Stat.Ann. § 516.-33: "[n]o person shall be incompetent to testify on account of his having been con-victed of an infamous crime, but the record of such conviction may be used to affect his credit as a witness." While the New Hampshire Supreme Court has held that "evidence of prior convictions of crime is inadmissible at a criminal trial either to establish guilt or to show that a defendant would be likely to commit the crime with which he is charged, it has also indicated that evidence of prior crimes is admissible when it is particularly probative in showing intent, an element in the crime, identity, malice, motive, a system of criminal activity, or when defendant has raised the issue of his character or when defendant has testified and the state seeks to impeach his credibility. *State v. Cote*, 108 N.H. 290, 294–95, 235 A.2d 111 (1967).

■ As defense counsel acknowledged, defendant's prior conviction would undoubtedly have been admissible for the purpose of impeaching his credibility during cross-examination. Under these circumstances, the withdrawal of the motion *in limine* based on his client's decision not to testify on his own behalf can only be characterized as a sound tactical choice which falls within the wide range of reasonable professional assistance.

■ In briefly addressing counsel's failure to secure a ruling on the motion *in limine,* we note that it is counsel's responsibility to assure that the record is complete. This entails obtaining the trial judge's ruling on the admissibility of a prior conviction on the record in order to remove any uncertainty as to the actual reasons for the trial judge's decision and to preserve the arguments made to him by counsel. *Cf. State v. Staples*, 121 N.H. 959, 437 A.2d 266 (1981). However, counsel's failure to do so here constitutes at most harmless error when viewed against the totality of the circumstances and facts surrounding the trial.

Even assuming that counsel's performance was deficient and that his errors caused petitioner not to testify, petitioner's

---

**3.** *See* Saltzburg, *Tactics of the Motion in Limine,* 9 A.B.A. Litigation 17, 20–21 (1983) recommend-ing that the final decision on motions *in limine* be postponed until after defendant testifies.

sixth amendment claim must still be rejected for he has failed to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* —— U.S. at ——, 104 S.Ct. at 2068.

Petitioner avers that his failure to testify due to the allegedly erroneous advice given by his counsel, could have made a critical difference at trial. In an affidavit submitted he states that he would have testified (1) that he did not commit the alleged crime, (2) that at all times he was clean-shaven and thus, did not meet the description provided by the victim, and (3) that he never permitted other persons to drive his vehicle and therefore, could not have been the person who stepped out of the passenger seat to assault the victim.

Notwithstanding this argument, the record indicates that defense witnesses testified that petitioner was clean-shaven on the night of the assault. There was also testimony to the effect that Perron did not allow others to drive his vehicle. When viewed against the totality of the evidence presented at trial, we do not believe that petitioner has shown a reasonable probability that his testimony would have made a difference.

2. *Failure to seek exclusion of the victim's photographic and corporeal identification of petitioner.*

At trial, evidence of two photographic identifications was introduced. The first array consisting of seventeen photographs contained two significantly different photographs of petitioner, and both were identified by the victim. The second array was shown to the victim just over two weeks after the first photographic identification. The victim initially selected two photo-graphs, but then rejected one in favor of petitioner's picture. Evidence of a corporeal identification made at petitioner's probable cause hearing was introduced as well. Defense counsel did not file a motion to exclude these identifications.

In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Court fashioned a two-pronged test for the exclusion of identifications based on impermissibly suggestive photo arrays. The first prong involves the determination of whether the identification procedure was impermissibly suggestive. If it was not, the court need go no further in its inquiry. If it was, then another inquiry must be made as to whether in light of the totality of the circumstances the suggestiveness is such that a likelihood of irreparable misidentification exists, applying the test set forth in *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).[4] Consequently, if an identification is found to be reliable, it will be admitted even though the confrontation procedure was suggestive. As stated in *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), reliability is the linchpin in determining the admissibility of identification testimony.

In view of the aforementioned principles, we find that neither the inclusion of the two photographs of petitioner in the first seventeen photo array shown to the victim nor the inclusion of his photograph in a second array was impermissibly suggestive.[5]

At trial, there was testimony concerning the photo arrays and an in-court identification of the petitioner. All the prosecution witnesses were subjected to thorough

---

**4.** This test consists of factors such as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation.

**5.** Because the identification procedure in the instant case was not impermissibly suggestive, as it was in *Vélez v. Schmer,* 724 F.2d 249 (1st Cir.1984) our decision is not controlled by the standards set forth in *Neil v. Biggers, supra.*

cross-examination by petitioner's counsel on the circumstances of the identification. There was testimony to the effect that the two photographs included in the first array were significantly different and were inadvertently included. Moreover, the victim positively identified petitioner on both occasions without any influence from the investigating officers.

The victim's descriptions of defendant and his automobile were both accurate and detailed. He testified that he had no difficulty selecting the photograph of Perron since he could easily recall the facial features from the night of the incident. *See Sumner*, 455 U.S. at 593–594, 102 S.Ct. at 1304–1305 (1982). The first identification was made only eleven days after the incident and the second one was made two weeks after the first photographic identification.

As previously mentioned, the victim also made a corporeal identification of petitioner on the date scheduled for the probable cause hearing. It appears that the victim readily identified petitioner from among a group of fifteen or twenty people in the courtroom. The victim was not subjected to a suggestive encounter, nor was the incident orchestrated by the government, *United States v. Hensel*, 699 F.2d 18, 40 (1st Cir.1983), *cert. denied*, — U.S. —, 103 S.Ct. 2431, 77 L.Ed.2d 1317, — U.S. —, 104 S.Ct. 91, 78 L.Ed.2d 99, — U.S. —, 104 S.Ct. 94, 78 L.Ed.2d 100 (1983), and as such, the identification was not impermissibly suggestive.

Clearly, there is sufficient evidence on record to support the conclusions of the New Hampshire Supreme Court and the district court that the procedures were not impermissibly suggestive. It should be noted that even when the identification procedures utilized could be considered suggestive, only the type of suggestivity which gives rise to a "very substantial likelihood of misidentification," *Simmons*, 390 U.S. at 384, 88 S.Ct. at 971, is prejudicial and requires taking the issue of reliability from the jury in the first instance. *Gullick v. Perrin*, 669 F.2d 1 (1st Cir.1981).

Moreover, the record reveals that the failure to file suppression motions was inconsequential, given the admissibility of the pretrial photographic identifications and the strong in-court identification by the victim. The fact that counsel chose to emphasize suggestiveness at the trial, is a strategic choice which is well within the range of competence expected of attorneys in criminal cases. *United States v. Bosch*, 584 F.2d at 1121–22. We will not use the benefit of hindsight to second-guess tactical decisions made by an attorney which are clearly reasonable. *See Strickland*, — U.S. at —, 104 S.Ct. at 2065.

### 3. *Failure to reiterate a request that an exception be noted.*

At trial, defense witnesses testified that petitioner, although frequently in trouble with law enforcement authorities, had changed for the better just prior to the offenses charged. In rebuttal, the prosecution was permitted to introduce the testimony of Officer Kelleher to the effect that he had seen petitioner intoxicated and in a belligerent attitude at the scene of an accident, three to five months prior to the assault.

At the bench, defense counsel objected, argued his objections and requested his objections and exceptions be noted. Although the court excluded references to possible parole violations, it admitted the substance of the testimony for the purpose of rebutting prior assertions that petitioner was a changed, non-violent person. The trial judge then gave an instruction to the jury to consider the testimony only for purposes of rebuttal and not as an indication that petitioner was more likely to be the assailant in this case. Even though defense counsel's failure to preserve his exception may constitute an error, any potential prejudice was avoided by the trial court's limiting instruction to the jury. Thus defendant's argument is without merit.

### 4. *Violation of the Sixth Amendment Right to a Speedy Trial.*

Petitioner argues that the nineteen-month delay between his arrest and trial violated his right to a speedy trial.

■ The Supreme Court has established four basic criteria to be considered in determining whether a defendant's constitutional right to a speedy trial has been violated. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These factors are the length of the delay, the reasons for the delay, the nature of the defendant's assertion of his right to a speedy trial, and the prejudice caused to the defendant as a result of the delay. *Id.* at 530, 92 S.Ct. at 2191; *see also United States v. Johnson*, 579 F.2d 122 (1st Cir. 1978).

The undisputed facts are that petitioner was arrested on November 20, 1979 and was subsequently released on bail. He was indicted in April 1980 and that same month the state filed a motion for speedy trial. The case was initially scheduled for trial in September 1980, but was continued, the state asserting that the victim was studying in Europe at the time. Petitioner moved to Pennsylvania in February 1981 where he remained until June 1981. On June 1, 1981 petitioner filed his first motion for a speedy trial and the case went to trial later that month.

■ None of the above mentioned factors is a necessary or sufficient condition to the finding of a deprivation of the right of a speedy trial. *Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* With these principles and the facts of this case in mind, we conclude that petitioner's right to a speedy trial was not violated. Petitioner failed to demonstrate substantial prejudice from the delay. The final six-month delay was due to his absence and as such cannot be weighed against the government. *Isaac v. Perrin*, 659 F.2d 279, 285 (1st Cir.1981).

*Affirmed.*