Hillsborough
No. 84-409

## The State of New Hampshire

v.

## Yvonne M. Dennehy

December 4, 1985

*Stephen E. Merrill*, attorney general (*Steven L. Winer*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, J. The defendant appeals from her convictions on charges involving conspiracy and theft by misapplication, as well as from the denial of her motion for a new trial on the ground of ineffective assistance of counsel. We find no error and affirm.

Yvonne Dennehy was indicted for theft by misapplication of property, under RSA 637:10, and conspiracy to commit theft by misapplication of property, under RSA 629:3. These charges arose out of the alleged misuse during 1979 and the early part of 1980 of the money of investors in the First Cable Investment Group (First Cable), a limited partnership which was formed by Stewart, Meyers & Company, Inc. (Stewart-Meyers) in 1979, the announced objective of which was to purchase a business known as Twin State Cable TV (Twin State).

Mrs. Dennehy, vice president of Stewart-Meyers, was tried jointly with James R. Meyers, an officer of Stewart-Meyers as well as one of three general partners in First Cable, and was convicted of both misapplication and conspiracy. At her request, a new attorney was

appointed to represent her after trial, and two motions for a new trial were filed, one based on newly discovered evidence and the other on ineffective assistance of counsel. After a lengthy hearing, the Trial Court (*Pappagianis, J.*) denied both motions on various grounds in a detailed order dated June 7, 1984.

On appeal, the defendant argues that the trial court erred both in its ruling on her motion for a new trial based on ineffective assistance of counsel and in certain instructions given to the jury.

The defendant raises two issues concerning the correctness of the trial judge's instructions to the jury. The first issue is whether the court's instruction relating to the disposition of property subject to a known legal obligation was incorrect. With regard to the crime of theft by misapplication of property, the trial judge instructed the jury, *inter alia*, that "the State must prove beyond a reasonable doubt . . . [that] the money was obtained subject to a known legal obligation to make a specified payment or other disposition to buy Twin State Cable TV *or to return the money to the investors*" (emphasis added). The trial judge used the same wording to instruct the jury on the conspiracy charge. The defendant maintains that this instruction erroneously created two separate options under which she could be convicted. Under the first option, the defendant could be found guilty if she knew that the money invested in First Cable was obtained subject to an obligation to buy Twin State. Under the second option, the defendant asserts, she could be found guilty if she knew merely that the money was obtained subject to an obligation to return it to the investors. She contends that RSA 637:10 does not contemplate the second option, and that the instruction permitted her conviction even if she was unaware that the money invested in First Cable was supposed to be used for the purchase of Twin State.

The second issue concerns only the court's conspiracy charge. The defendant maintains that the effect of the charge as given was to "change[ ] a single conspiracy case into subsets of multiple conspiracies." We consider each of these issues below.

I. *Ineffective Assistance of Counsel*

In her motion based on ineffective assistance of counsel, the defendant raises a number of grounds which, she contends, entitle her to a new trial. Since the court below dealt exhaustively, and, we believe, correctly, with each of the many grounds raised in her motion, we will consider only the ground specifically argued in defendant's brief; namely, trial counsel's failure to introduce certain evidence corroborating her assertion that she was owed money by Stewart-Meyers. This evidence includes three checks payable to Stewart-Meyers, of which two were drawn on the account of the

defendant and her husband and one on that of Belden Enterprises. Dennehy's appellate counsel asserted at oral argument that her trial counsel's failure to introduce this evidence at trial was a "serious error" rising to the level of ineffective assistance of counsel.

Both the United States Constitution and the New Hampshire Constitution guarantee the accused a right to the effective assistance of counsel. U.S. CONST. amend. VI; N.H. CONST. pt. I, art. 15; *Breest v. Perrin,* 125 N.H. 703, 705, 484 A.2d 1192, 1194 (1984). We independently consider first our State Constitution, and cases interpreting it, looking to decisions of the United States Supreme Court and those of other jurisdictions only as a guide to our decision. *See State v. Ball,* 124 N.H. 226, 233, 471 A.2d 347, 352 (1983). As we have recently stated, "the analysis and result is the same under each constitution," and the State and federal standards are identical, *State v. Glidden,* 127 N.H. 359, 499 A.2d 1349 (1985) (citing *Abbott v. Potter,* 125 N.H. 257, 260, 480 A.2d 118, 119 (1984)). In order to succeed, the defendant must show: (1) that his lawyer's performance did not meet the standard of reasonable competence, and (2) that he has been prejudiced as a result. *See Strickland v. Washington,* 104 S. Ct. 2052, 2064–67 (1984).

We have stated in prior cases that "[t]he constitutional standard by which we measure the performance of a lawyer in representing his client in a criminal case is 'reasonable competence.' " *State v. Perron,* 122 N.H. 941, 946, 454 A.2d 422, 424 (1982) (citing *State v. Staples,* 121 N.H. 959, 961, 437 A.2d 266, 267 (1981)); *see Strickland v. Washington, supra* at 2065.

The defendant's trial counsel testified during his deposition that his decision not to introduce the three checks was an informed tactical choice, based on his judgment that had the two personal checks been introduced, the State could have shown "payments right back out . . . ," thus negating the checks' potential value to the defendant, and in fact possibly harming her in the eyes of the jury. With regard to the Belden Enterprises check, trial counsel stated that "Dennehy wasn't Belden Enterprises. Belden Enterprises Inc. was a corporation which . . . was owned by her husband and . . . we would not be able to claim credit for payment that she had made into the company which came from Belden Enterprises." In addition, trial counsel stated that he believed the issue of whether or not Stewart-Meyers owed Dennehy money was collateral to the main issues at trial, and the trial court in its order concluded that the check evidence was immaterial.

As we have stated before, " '[w]e will not second-guess the tactical decisions of defense counsel.' " *State v. Guaraldi,* 124 N.H.

93, 98, 467 A.2d 233, 236 (1983) (quoting *State v. Perron*, 122 N.H. 941, 946, 454 A.2d 422, 425 (1982)). His decision not to introduce the checks was not unreasonable, but rather was "'within the range of competence required of attorneys representing defendants in criminal cases.'" *State v. Fleury*, 111 N.H. 294, 299, 282 A.2d 873, 877 (1971) (quoting *Parker v. North Carolina*, 397 U.S. 790, 797–98 (1970)). In addition, we do not believe that trial counsel's failure to hire his own expert accountant has been shown to be unreasonable. "Reviewing courts start with the strong presumption that counsel's conduct falls within the limits of reasonable practice, . . . bearing in mind the limitless variety of strategic and tactical decisions that counsel must make[,]" *State v. Faragi*, 127 N.H. 1, 498 A.2d 723 (1985) (citations omitted), and we do not believe that the defendant has overcome this presumption in the instant case.

■ Since we hold that counsel's performance was not deficient under the reasonable competence standard, we need not address separately the question of prejudice to the defendant, *see Strickland v. Washington*, *supra* at 2064, and therefore do not reach the issue of whether or not the evidence was collateral. We thus hold that the defendant has not been deprived of her State constitutional right to the effective assistance of counsel. As we have already noted, the Federal Constitution provides no greater protection.

## II. *Jury Instructions*

### A. *Theft by Misapplication of Property and Conspiracy*

The relevant portion of our theft by misapplication statute is as follows:

> "A person commits theft if he obtains property from anyone or personal services from an employee upon agreement, or subject to a known legal obligation, to make a specified payment or other disposition to a third person, whether from that property or its proceeds or from his own property to be reserved in an equivalent or agreed amount, if he purposely or recklessly fails to make the required payment or disposition and deals with the property obtained or withheld as his own."

RSA 637:10, I. The portion of the trial court's instructions on conspiracy to commit theft by misapplication and theft by misapplication which the defendant finds objectionable reads as follows:

> "the money was obtained subject to a known legal obligation to make a specified payment or other disposition to

buy Twin State Cable TV or to return the money to the investors."

This instruction is erroneous, according to the defendant, because it does not sufficiently make clear that a finding that the defendant knew that the First Cable investment money was to be used specifically to buy Twin State was necessary to a conviction. The instruction appears to refer to two legal obligations: (1) an obligation to buy Twin State, and (2) an obligation to return the money to the investors. The defendant contends that only a violation of the first obligation, which involves a "payment or other disposition to a third person," satisfies RSA 637:10. The instruction, asserts the defendant, permits a conviction based on a violation of the second obligation alone.

■■ We note at the outset that the disputed instruction is not to be viewed in isolation, but, rather, is to be taken ". . . within the context of the overall charge." *State v. Fournier*, 123 N.H. 777, 778, 465 A.2d 898, 899 (1983) (citations omitted). Moreover, "[t]he standard of our review of a trial judge's instruction to the jury is well settled: We must determine whether the disputed jury instruction, in the context of the instructions as a whole, fairly covers the issue and law of the case." *State v. Sadvari*, 123 N.H. 410, 414, 462 A.2d 102, 104 (1983) (citing *State v. Bird*, 122 N.H. 10, 15, 440 A.2d 441, 443 (1982)).

■ We are convinced that the jury instruction, examined in light of the court's charge to the jury as a whole, was neither erroneous nor confusing. The defendant's "dual obligation" interpretation is tortured and unreasonable. A more sensible reading of the instruction is that it refers to a unitary legal obligation; *i.e.*, a single obligation *either* to purchase Twin State or to return the money to the First Cable investors. The defendant thus could be convicted only if she knew of this unitary legal obligation and not, as she contends, if she did not know the purpose of First Cable. In addition, Dennehy admitted at trial that she was aware of the purpose of First Cable itself. We therefore find no possibility of prejudice to the defendant from the instruction as given.

B. *Conspiracy*

RSA 629:3, I, reads in relevant part as follows:

> "A person is guilty of conspiracy if, with a purpose that a crime defined by statute be committed, he agrees with one or more persons to commit or cause the commission of such crime, and an overt act is committed by one of the conspirators in furtherance of the conspiracy."

The defendant's conspiracy indictment alleges that she entered into a purposeful agreement "with James Meyers, Robert Stewart, *and* others unknown to divert the [First Cable] investors' funds from the purchase of Twin State Cable TV to other purposes" (emphasis added). In his charge to the jury on the elements of the crime of conspiracy, the trial judge instructed the jury that the crime of conspiracy included a purposeful agreement "with Robert Stewart *or* James Meyers *or with both* to commit the crime of theft by misapplication of property worth more than $1,000" (emphasis added). The defendant contends that this instruction constitutes reversible error in that it refers to multiple conspiracies, in contrast to the indictment's charge of a single conspiracy. According to the defendant, this variance deprived her of actual notice and created a danger that, if the jury found that the defendant conspired with Stewart but not with Meyers, the evidence against Meyers would "spillover" and improperly affect the jury's determination of the defendant's guilt.

We have discussed above the general standard for our review of the correctness of a trial judge's instructions to a jury, and need not repeat it here. In addition, we have stated before that

> "[a]lthough the indictment is phrased in the conjunctive, a disjunctive instruction paralleling specific statutory language is adequate when the indictment has given the accused sufficient notice of the charges against him and the proof necessary for a conviction."

*State v. Langdon*, 121 N.H. 1065, 1070, 438 A.2d 299, 302 (1981) (citing *State v. Bergeron*, 115 N.H. 70, 73, 333 A.2d 721, 723–24 (1975) and *State v. Merski*, 121 N.H. 901, 914, 437 A.2d 710, 718 (1981), *cert. denied*, 455 U.S. 943 (1982)). We hold that that standard has been met here.

 "We have stated that 'an indictment is sufficient if it uses the words of the proper section of the applicable statute. The test of its sufficiency remains always the same: whether it gives the defendant enough information so that he can prepare for trial.'" *State v. Meloon*, 119 N.H. 76, 77, 397 A.2d 1041, 1042 (1979) (quoting *State v. Panichas*, 107 N.H. 359, 362, 222 A.2d 211, 213 (1966)). It must describe all of the essential elements of the crime. *See State v. Bussiere*, 118 N.H. 659, 661, 392 A.2d 151, 153 (1978). Here, the defendant was put on notice of the nature of the charges against her in a thoroughly detailed indictment which enabled her to learn what was needed to meet the charges at trial, as well as what would be required to convict her.

The indictment was phrased in the conjunctive, and the evidence adduced at trial established the presence of a single conspiracy among Dennehy, Stewart, and Meyers. Therefore, we hold that she was not prejudiced by the discrepancy between the indictment and the instruction. *See State v. Langdon supra.* With regard to the defendant's spillover argument, we note that the trial judge specifically instructed the jury to consider the evidence of conspiracy by Dennehy separately from the evidence of conspiracy by Meyers. This instruction greatly diminished the possibility of spillover from the case against Meyers to the case against Dennehy.

In summary, we conclude that there was no error on any of the asserted grounds, and we therefore affirm the convictions and the denial of the motion for a new trial.

*Affirmed.*

JOHNSON, J., concurred specially; the others concurred.

JOHNSON, J., concurring specially: I concur with the remarks of my brother Souter in *State v. Kellenbeck,* 124 N.H. 760, 474 A.2d 1388 (1984), in his special concurring opinion in which he stated:

"I concur in the result and wish only to express . . . my reservation about the approach to State constitutional adjudication adopted in *State v. Ball,* 124 N.H. 226, 471 A.2d 347 (1983), and followed here. When a federal constitutional standard is binding upon us and we do not question the soundness of the result it would require, I would rest the decision of the case on the federal standard. I would concentrate on the development of State constitutional law in those cases when a State rule would be different from its federal counterpart and would affect the outcome. I believe that over the long term, the adjudicatory process is likely to lead to sounder results when a practical difference is at stake."

*Id.* at 766–67, 474 A.2d at 1392.