Strafford
No. 88-218

THE STATE OF NEW HAMPSHIRE

v.

GARY M. FECTEAU

January 31, 1990

*John P. Arnold*, attorney general (*Kathleen A. McGuire*, senior assistant attorney general, and *Jeffrey W. Spencer*, attorney, on the brief), by brief for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief for the defendant.

*Gary M. Fecteau*, by brief, *pro se.*

BROCK, C.J. The defendant was convicted after a jury trial in Superior Court (*McHugh*, J.) of burglary, RSA 635:1. He argues on appeal that the police failed to give him all the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966), and that his incriminating statements should have been suppressed. The sole issue we address under the Federal Constitution is whether a defendant must be advised, prior to custodial interrogation, of his right to terminate questioning at any time, and whether a waiver under *Miranda* is defective in the absence of such a warning. We hold that no such warning is required, and affirm the defendant's conviction.

The charges against the defendant arose from the following events. At approximately 5:00 p.m., on July 16, 1987, the defendant was driving his van down Central Avenue in Dover. He observed the seventeen-year-old victim riding her bicycle up a hill, and proceeded to follow her as she rode home from work. The girl's father, who had arranged to take her to a karate class, was waiting outside in his car. Being late for her lesson, the girl did not stop to speak to her father, but rushed into her apartment and began changing into athletic clothes.

Minutes later, the defendant drove his van into a nearby parking lot. Following the victim, he entered her apartment through an unlocked door, and as she stepped out of the bathroom, clasped his hands tightly over her mouth and eyes. Thinking at first that her father was testing her karate skills, the girl cried, "Daddy, don't do this to me." When she heard a stranger's voice, she began to scream, and despite his threats to "shut up or I'll hit you," continued screaming until he elbowed her in the back, causing her to fall. In the brief but fierce struggle that followed, the victim hit, kicked and punched the defendant until he fled out the door.

Running to her father, the girl described her assailant, who was spotted thereafter hurrying toward his van. The father then pursued the defendant and restrained him until the police arrived. After arresting the defendant, the police took him to the police station, where he was advised of his *Miranda* rights. An officer testified that he read the *Miranda* warnings verbatim from a standard card. Included on the card, which was admitted into evidence, were the four traditional *Miranda* warnings. According to the officer's testimony, he paused after each warning to ask the defendant if he understood what was read, and the defendant indicated after each warning that he did understand.

Following an initial interview, at which he gave an exculpatory statement, the defendant expressed his willingness to make a written statement, and the same four *Miranda* warnings were presented to him on a standardized police department form. The defendant then expressed a desire to type his own statement, and was permitted to do so by the police, who brought him a typewriter and left him alone until he was finished. The defendant proofread, edited, and signed the statement.

Subsequently, the defendant sought suppression of his statements on the ground that the warnings he was given were inadequate. After an evidentiary hearing, the trial court denied the motion to suppress, finding that the requirements of *Miranda* were met, and that the defendant had validly waived his rights.

In *Miranda v. Arizona,* the Supreme Court established warnings, in now-familiar words, that advise criminal suspects of their fifth amendment privilege against self-incrimination. The Court held, specifically, that prior to custodial interrogation, a defendant is entitled to be informed of four specific rights:

> "He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

*Miranda v. Arizona,* 384 U.S. 436, 479. Finding that *Miranda* is satisfied by warnings that reasonably convey this information, the Supreme Court has never mandated a specific verbal formulation that police must adhere to in advising a suspect of his rights. *Duckworth v. Eagan,* 109 S. Ct. 2875, 2879 (1989). Thus, the police need not echo the exact warnings described in *Miranda,* but must, prior to interrogation, fully apprise a suspect of his rights to remain

silent and to have counsel present, and of the State's intention to use his statements to secure a conviction. *Moran v. Burbine,* 475 U.S. 412, 420 (1986).

■ Although the defendant does not dispute that he received the warnings enumerated above, he contends that *Miranda* imposed upon the police the obligation to deliver another admonition, informing him of the right to cease answering questions at any time. Claiming that the police failed so to advise him, the defendant argues that his waiver was invalid. We disagree. Neither the United States Supreme Court nor this court has ever required that police inform a suspect that he has the right to terminate questioning at any time, and we expressly decline so to hold today.

Beyond the duty to inform, *Miranda* imposes upon the police the obligation to honor a suspect's request that interrogation cease. There is language in *Miranda* to the effect that "once warnings are given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–74. Read in the context in which it was written, this directive unquestionably refers to the procedure police must follow *after* delivering the four required admonitions. Thus, while a suspect might find it useful, prior to questioning, to receive an added precaution elaborating upon the right to remain silent, the procedural dictates of *Miranda* do not include express advice to an accused of the right to cut off questioning.

In our view, the defendant misapprehends the distinction between his privilege under the fifth amendment and the warnings required by *Miranda*. It is now well established that "*Miranda* warnings are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.'" *Duckworth v. Eagan, supra* at 2880 (*quoting Michigan v. Tucker,* 417 U.S. 433, 444 (1974)). By establishing specific warnings, the Supreme Court in *Miranda* struck a balance between society's legitimate law enforcement interests and the protection of a defendant's fifth amendment rights.

We have considered other arguments presented in the defendant's *pro se* brief and find them without merit.

*Affirmed.*

THAYER, J., did not participate; the others concurred.