Strafford
No. 89-301

THE STATE OF NEW HAMPSHIRE

v.

GARY FECTEAU

March 8, 1991

*John P. Arnold*, attorney general (*Jeffrey W. Spencer*, attorney, on the brief and orally), for the State.

*Murphy, McLaughlin & Hemeon P.A.*, of Laconia (*Philip T. McLaughlin* on the brief and orally), for the defendant.

JOHNSON, J. The defendant, Gary Fecteau, was convicted of one count of aggravated felonious sexual assault, one count of attempted aggravated felonious sexual assault, and two counts of burglary, following a jury trial in the Superior Court (*Nadeau*, J.). He was sentenced to seven and one-half to fifteen years for each assault

conviction, and three and one-half to seven years for each burglary conviction, all terms to be served consecutively in the New Hampshire State Prison. Fecteau appeals the convictions, alleging that the trial court erred in: (1) denying his motion to suppress an out-of-court identification, which he argues was unnecessarily suggestive and violative of his right to counsel; (2) consolidating for trial four indictments involving two separate assaults; (3) admitting evidence of a third burglary committed by Fecteau; and (4) denying his request for funds to transport an out-of-state witness. We affirm all four convictions.

This case involves two assaults committed during June of 1987 against two University of New Hampshire students. The first attack occurred on June 2, 1987, in Dover, while the second attack took place in Durham on June 29, 1987. We describe the facts relating to the June 2 attack first.

On June 1, 1987, the first victim and her roommate were moving their belongings from one apartment in Dover to another. The roommate stopped work around 11:30 p.m., and left the victim for about two hours while she ate at a local restaurant. Between 1:00 and 1:30 a.m., the victim left the new apartment briefly to move her car. As she descended the interior staircase of the apartment building, she saw a man a few feet below her on the stairway. The area was brightly lit, and the victim saw most of the man's face and all of his back for several seconds. Later, she described the man as 5'10" tall, of medium build, in his early twenties, with short dark hair, and wearing tightly-fitting grey shorts and a white tank top.

After the victim moved her car, she returned to her apartment and attempted, without success, to lock the door. Leaving the door closed, but unlocked, she shut off the lights and went to bed. A few moments later, she heard a noise in the living room. A man appeared in her bedroom doorway and remained there for fifteen to twenty seconds. It was too dark to see his face, but she saw a silhouette of his body.

At trial, the victim testified to the following. The man got on top of her, gagged her with a cloth he held and threatened to knife her. By his weight and strength, he kept her pinned to her bed and he threatened to kill her. He removed her tee-shirt and pulled down her sweat pants, but then suddenly jumped up and ran out of her bedroom.

The victim then heard her roommate scream. The roommate had just returned to the apartment and turned on the living room light. She testified that as she approached the victim's bedroom, the at-

tacker appeared at the bedroom door and ran toward her. The room-mate was face to face with him for several seconds and saw him clearly before he sped past her and out of the apartment. She later described this man as 5'8", somewhat muscular, medium build, in his early twenties, with short dark brown hair, and wearing grey shorts and a white tank top. The victim and her roommate did not share with each other their visual impressions of the man before discussing them with the police.

The assault against the second victim took place at about 2:30 p.m. on June 29, 1987, at the house the victim was renting with three other women. The victim had just returned that afternoon from a trip out-of-town. At trial, she testified that she opened the unlocked front door of the house, walked through the house, and found none of her house-mates at home. She then saw a man standing with his back to her in the doorway of a bedroom. Later, she described him as 5'8" or 5'9", heavy set, with medium length dark brown hair. The room was well-lit, and for a few seconds she saw his face clearly. He grabbed her face and pushed her face-down onto a couch in the livingroom. When she screamed, he threatened to kill her, and when she struggled, he threatened to hurt her. Believing his threats, she no longer screamed or struggled.

The man removed the victim's shorts and underwear. He then penetrated her with his tongue, and forced her to perform fellatio on him. She testified that he then forceably engaged in sexual intercourse with her despite her verbal pleas to halt the assault.

## I. *Identification Procedures*

Fecteau argues that the identification procedures used by the Dover Police Department in the first case violated due process under both the State and the Federal Constitutions. The procedures used in the second case are not in issue. (The second victim positively identified Fecteau as her assailant from a photo lineup and at trial.)

Immediately following the assault against the first victim, the police asked her roommate to look through "mug books" and tell them if she found a photograph that resembled the perpetrator of the assault. She could not make a positive identification. A month later, the police again asked the roommate to look at photographs for the purpose of identifying the attacker, and again she was unable to make a positive identification. Then on September 3, 1987, the police asked both the roommate and the victim independently to look at a third set of photographs, in which, for the first time, Fecteau's picture appeared. The roommate picked out his picture and said that she was

"99% sure" that it depicted the man she saw in her apartment on the night of the assault. While the victim focused specifically on Fecteau's picture, she did not positively identify him as her assailant. Both women indicated they would be better able to make an identification if they could see the man who committed the crime in person.

The defendant does not question the propriety of the identification procedures described above. He argues, however, that the procedures used in his identification at the Dover District Court, described below, were unnecessarily suggestive and violated his right to counsel.

Sergeant Frank Santin of the Dover Police Department arranged to have the victim and her roommate view Fecteau at the Dover District Court on September 23, 1987, the day Fecteau was scheduled to appear for a probable cause hearing. September 23 was also an arraignment day; Santin chose that date in order to ensure that many people would be present in the courtroom and thus reduce the risk that the two witnesses would focus unjustifiably on Fecteau. Because Fecteau was scheduled to appear in court at 9:00 a.m., Santin planned to wait until shortly after 9:00 a.m. before bringing the victim and her roommate to the courthouse. In this way, Santin testified, he would be able to reduce the likelihood of the women's meeting Fecteau by himself in a hallway.

A few minutes after 9:00 a.m., Santin brought the victim and her roommate to a position across the street from the courthouse entrance. They stood there for several minutes awaiting the signal of another officer, who had stepped into the courthouse to make sure that Fecteau was seated inside the courtroom. While they were waiting and conversing, Fecteau drove up in front of the courthouse with his wife. Fecteau stopped his van in the middle of the road, got out, and walked into the courthouse while his wife drove the van away. Surprised, and worried that the women might see Fecteau, Santin stepped to one side in an attempt to unobtrusively block their view, and tried to distract them by continuing the conversation. Both women, however, saw Fecteau and later told the police that they instantly recognized him.

After a few more minutes, the officer inside the courthouse signaled to Santin, and he led the women into the building. The roommate went into a conference room with one of the officers, and Santin prepared to bring the victim inside the courtroom. He stressed that she might not recognize anyone inside, and told her not to identify someone unless she was sure of her decision. She then walked into

the courtroom, with Santin beside her, and looked around. The trial court later found that "[t]here were approximately 12 other males in attendance excluding uniformed police officers" and that "[t]he defendant was seated in the general audience of the courtroom." The victim positively identified Fecteau as the man she saw in her stairwell just before she was assaulted (she was never able to positively identify anyone as the man who was in her apartment and attacked her that night). While the victim was in the courtroom, her roommate told one of the officers that she had recognized Fecteau while they were outside; thus the roommate did not make an identification inside the courtroom.

Fecteau moved to suppress the two "street identifications" made by the victim and her roommate, as well as the "courtroom identification" made by the victim on September 23, on the ground of suggestiveness and violation of his right to counsel. At the suppression hearing, Fecteau testified that while he sat in the courtroom of the Dover District Court that morning, he saw Santin and the victim walk in. He testified, "I really didn't see [the victim's] eyes fixed on me, but she obviously looked at everybody." After Santin and the victim entered the room, Fecteau's then-attorney, Robert Solomon, asked him if he had noticed anyone walk in. When Fecteau replied that he had, Solomon told him to write down everything that he noticed, including the condition of the room and the people in it.

Solomon also made note of who was present in the courtroom that morning. When asked why he did this, Solomon testified:

> "Well, I was surprised to find out during the course of the probable cause hearing, during questioning, that there was an identification procedure going on apparently either in the courtroom or just outside the courtroom, which I was not aware of. And as a consequence of that I tried to preserve the record as best I could as to what had transpired that day."

There is no evidence that Santin or any other police officer had told Solomon that an identification would likely take place that morning.

The Superior Court (*Gray*, J.) denied Fecteau's motion to suppress, ruling that the identification procedures used by the Dover police were neither unnecessarily suggestive nor violative of his right to counsel. On appeal, Fecteau argues that the trial court's ruling resulted in a violation of part I, article 15 of the New Hampshire Constitution, as well as the sixth and fourteenth amendments to the Federal Constitution. However, Fecteau did not specifically raise a State constitutional issue below, and therefore we will address only

the federal constitutional issues. *See State v. Dellorfano*, 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986).

 We address the issue of suggestiveness first. On appeal from a motion to suppress, "'[w]e will not overturn the trial court's finding unless, after reviewing the record, we conclude that it is contrary to the weight of the evidence.'" *State v. Guay*, 130 N.H. 413, 418, 543 A.2d 910, 913 (1988). To determine whether the superior court's ruling is contrary to the weight of the evidence, we ask whether the identification procedures used were "so unnecessarily suggestive and conducive to irreparable mistaken identification that [Fecteau was] denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301–02 (1967), *impliedly overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314, 321, 328 (1987); *see also Simmons v. United States*, 390 U.S. 377, 384 (1968). The defendant has the burden of proving unnecessary suggestiveness. *State v. Allen*, 133 N.H. 306, 310, 577 A.2d 801, 803 (1990) (interpreting the Federal Constitution). If the defendant fails to meet this burden, our inquiry will end, and we will uphold the trial court's ruling. *See Perron v. Perrin*, 742 F.2d 669, 675 (1st Cir. 1984).

██ A review of the record reveals no unnecessary suggestiveness in the procedure used by the Dover Police Department. While the victim and her roommate saw Fecteau by himself on the street in front of the courthouse, this encounter was plainly accidental and precisely the sort of meeting which Sergeant Santin took great pains to avoid. When Fecteau unexpectedly appeared on the scene, Santin endeavored to distract the women's attention from him, and did nothing to suggest that this man was a suspect in the case. The police cannot be faulted for such an accident. *See United States v. Hensel*, 699 F.2d 18, 41 (1st Cir.), *cert. denied*, 461 U.S. 958, 464 U.S. 823, 464 U.S. 824 (1983).

██ The identification procedure which took place inside the courthouse was thoughtfully planned and executed, and carefully designed to eliminate unnecessary suggestiveness. Fecteau's bald assertion that the victim's courtroom identification was conducted under unnecessarily suggestive conditions fails to explain how any part of the procedure was actually suggestive. Sergeant Santin chose a crowded court day for the identification attempt in order to ensure that the two witnesses would have to compare Fecteau with other men. Moreover, nothing was done by Santin, the other officers, or

anyone else to draw attention to Fecteau, or to identify him as a suspect in the case.

We next address Fecteau's contention that the identification procedure used on September 23 violated his right to counsel under the Federal Constitution. First, we note that Fecteau was arrested on September 8, 1987, on charges stemming from the assault against the first victim, based on the photographic identifications made by the first victim and her roommate, as described above. Presumably he was arraigned within a day of the arrest, *see* R. MCNAMARA, 1 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 338, at 211–12 (1980) (persons must be arraigned within twenty-four hours of arrest), and thus his right to counsel had attached by September 23. *See Kirby v. Illinois*, 406 U.S. 682, 688–90 (1972) (opinion of Stewart, J.). Moreover, under federal law, a lineup conducted after formal charges have been brought is considered a critical stage of prosecution, and thus one at which the defendant is entitled to counsel. *United States v. Wade*, 388 U.S. 218, 236–37 (1967).

■■■ The defendant suggested at oral argument that his counsel should have been present when the two women saw and identified him in the street in front of the courtroom. We disagree. As noted above, this encounter was accidental. Because the police (1) did not arrange this meeting; (2) made an effort to avoid such a meeting; and (3) endeavored to minimize the effects of the meeting, we conclude that Fecteau's right to counsel was not implicated. *See United States v. Hensel*, 699 F.2d at 41. Where there is no deliberate State action, there can be no violation of a constitutional right. *See id.*

■■ The identification procedure employed inside the courthouse, on the other hand, was plainly orchestrated by the police, and thus implicated Fecteau's right to counsel. Fecteau argues that the police officers acted in violation of his constitutional right because they did not notify him or his attorney that the identification would likely take place. *See generally Kirby v. Illinois*, 406 U.S. 682; *United States v. Wade*, 388 U.S. 218. We agree. This error was harmless, however, because we can say beyond a reasonable doubt that the evidence of the courtroom identification did not affect the verdict. *See State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976). The courtroom identification was only one of many identifications of Fecteau made by the witnesses. Both victims and the roommate identified Fecteau at trial, the second victim and the roommate identified him at a photographic lineup (the first victim focused on Fecteau's picture at a

photographic lineup), and the first victim and the roommate identified him outside the Dover District Courthouse. In light of "the overwhelming weight of the evidence presented against [Fecteau] at his trial," *State v. Green*, 133 N.H. 249, 260, 575 A.2d 1308, 1315 (1990), we find beyond a reasonable doubt that the admission of the first victim's courtroom identification into evidence did not affect the verdict.

## II. *Consolidation*

On April 4, 1988, the State filed a motion to consolidate for trial the charges stemming from the attacks against the two victims. The defendant objected to this motion, but the Superior Court ( *Temple,* J.) nonetheless granted it. Upon obtaining new counsel, the defendant moved to sever the two cases. The State objected, and the Superior Court (*Nadeau,* J.) denied the motion.

On appeal, the defendant argues that the trial court's decision to consolidate, and failure to sever, the two cases violated his right to a fair trial as guaranteed by part I, article 15 of the New Hampshire Constitution. His main contention is that, due to the similarities of the two assaults, there was a likelihood that a jury would convict him of committing one assault simply upon proof of the other.

■■ A trial court's ruling on a consolidation issue will not be disturbed on appeal absent an abuse of discretion. *See State v. Dellner*, 130 N.H. 89, 90, 534 A.2d 396, 397 (1987); *State v. Lainey*, 117 N.H. 592, 595, 375 A.2d 1162, 1164 (1977). To determine whether the court has abused its discretion, we must "ask whether the evidence in support of each offense was brief, simple and unlikely to confuse a jury, and easily referable to each crime." *State v. Cote*, 129 N.H. 358, 367, 530 A.2d 775, 780 (1987); *accord* II ABA STANDARDS FOR CRIMINAL JUSTICE, JOINDER AND SEVERANCE, Standard 13-3.1(c) (2d ed. 1980). In *State v. Cote*, we upheld the trial court's decision to consolidate eight sexual assault charges on the following grounds: (1) the evidence and testimony offered in support of each offense was not unduly lengthy; (2) the evidence was simple and the facts that the State was required to prove to establish each offense were not complicated; (3) the evidence relating to one offense was distinguishable from that relating to a different offense; and (4) the trial court was careful to caution the jury to consider each offense separately. *Id.* at 367–68, 530 A.2d at 780.

■ In the present case, there were only three eye-witnesses to the two assaults, and each person testified in a clear, concise manner.

The facts of the two assaults were not complicated. In addition, although the attacker employed a similar *modus operandi* in assaulting each victim, the facts relating to the first assault are readily distinguishable from those relating to the second. Not only did the assaults occur on different dates, at different times, and involve different victims, but the attacker was interrupted during the first assault by the arrival of the victim's roommate, whereas he completed the act of intercourse in committing the second assault. Thus, "[t]he jury could easily examine and weigh the evidence in each case without risk of confusion since the charges arose out of [two] distinct incidents." *State v. Manna*, 130 N.H. 306, 310, 539 A.2d 284, 286 (1988). Moreover, the trial court cautioned the jury to consider each offense separately. Accordingly, we find no error in the trial court's decision to consolidate the two charges.

### III. *Reference to Evidence of Prior Case on July 16, 1987*

Before trial, the State moved for permission to introduce evidence that Fecteau had been arrested in Dover on July 16, 1987, for burglary. This burglary occurred *after* the assaults and burglaries that are the subject of this appeal, but *before* the arrests in these cases. He was eventually convicted in that case for attacking a seventeen-year-old girl in her apartment in circumstances similar to the two assaults on appeal here. *State v. Fecteau*, 132 N.H. 646, 568 A.2d 1187 (1990). It was because of these similarities that the Dover police decided to include Fecteau's picture in a photo lineup in the first assault case. After the roommate positively identified Fecteau from this photograph, the Dover police sent the picture to the Durham police, to aid them in their search for suspects in the other assault case. Thus, the July 16, 1987 burglary arrest ultimately led to the arrests and convictions in these two cases. The Superior Court (*Temple*, J.), however, denied the State's motion to introduce evidence of the burglary arrest, finding that the prejudicial effect of the evidence outweighed its probative value.

Accordingly, the prosecutor made no mention of Fecteau's July 16, 1987 burglary arrest during her opening argument, and thus was unable to tell the jury why the Dover police focused on Fecteau as a suspect in the first case. Defense counsel also made no mention of that arrest in her opening statement, and instead implied that the police had *no* good reason for focusing on him as the perpetrator of these offenses. She began by stating that "[t]he real issue in this case is the way in which the police made up their mind about the guilt of Gary Fecteau." She said that "[d]uring that summer of 1987, . . .

things were going fairly well for he [sic] and his family," and that his arrest in September of 1987 for the assault against the first victim "begins a nightmare for the Fecteau family that continues to this day." Fecteau, of course, had already been arrested on July 16, 1987, for the burglary that day which ultimately resulted in his conviction. *State v. Fecteau supra.* For defense counsel to state to the jury that "[d]uring that summer of 1987, . . . things were going fairly well for [Fecteau]" is a pure and simple misstatement of fact designed to mislead the jury in their role as finder of fact.

Fecteau's attorney then told the jury that the first victim, her roommate, and the second victim all came to their identification of Fecteau "by the assistance of the police." Furthermore, the identifications were "inevitable . . . because of all the influences that have come before them." Defense counsel explained how Fecteau came to be arrested in these cases:

> "Several weeks after the case was suspended . . . because there were no leads and there were no suspects . . . the Dover police *came into contact with Gary Fecteau through their investigation of an unrelated matter.* And they began to try and build a case against him on this case. You will hear that an officer was assigned to develop the case against Gary Fecteau, and that the police pursued Gary as a suspect. You will hear that one of the officers put together a photographic lineup that included Gary's photo, and at that point, the case was reopened."

(Emphasis added.) Fecteau's attorney stated that the Dover police made the decision to arrest Fecteau in the first case when there "was no clear description, no composite, no positive identification, and a denial by the suspect . . . as to any involvement in this incident. . . . They had made up their mind. . . ." In describing the identifications the first victim and her roommate made at the Dover District Court, the defendant's attorney told the jury: "The police had finally succeeded in getting the identification that they wanted." She then asked the jury to consider whether these identification procedures were fair, and questioned: "Are they procedures that you would want to be used against you if you were accused of a crime?"

Immediately following defense counsel's opening statement, the prosecutor moved the court to reconsider its previous ruling denying admission of evidence of the July 16, 1987 burglary arrest under Rule 404(b). She stated:

"My position at this time, following the thrust of that opening argument is that the prosecution has now been placed into a very unfair situation in this trial, and I feel that my hands are tied, and that the hands of my witnesses are going to be tied in terms of trying to answer the accusations that were made in the opening statement."

The defendant's attorney protested that she "told the jury that Gary was being investigated, or that they came into contact with him through another investigation of an unrelated matter. So the jury knows that the police had some prior contact with him. . . ." The following colloquy took place:

> "MS. AABY: I commented that he was being—they came into contact with him by the fact that *he was being investigated for an unrelated matter.*
>
> THE COURT: You haven't told the jury that.
>
> MS. AABY: No. I did say that.
>
> MS. RUNDLES: You did not say that.
>
> MS. AABY: I said that they came into contact with him through the investigation of an unrelated matter.
>
> MS. RUNDLES: No, not that *he was being investigated.*"

(Emphasis added.) After further discussion, the court agreed that defense counsel had created a misleading impression about the nature of the initial contact, and granted the prosecutor's motion:

> "THE COURT: The question that both Judge Temple and I evaluated in terms of prejudice to the defendant has now been obliterated by your opening statement. Otherwise, that evidence would be admissible under Rule 404, if that is what is being argued here. But for the fact of its prejudice, because of the similarity, because of the nature of the crime?
>
> MS. AABY: Right.
>
> THE COURT: But that has been taken away. That prejudice has now been equaled or exceeded by the prejudice of excluding it."

During the course of the trial, the court allowed two officers to explain on the witness stand why they focused on Fecteau in the first case. The witnesses were not permitted to tell the jury that Fecteau was eventually convicted for the July 16, 1987 burglary, and the judge cautioned the jury not to consider this evidence on the issue of guilt in the cases before them.

On appeal, Fecteau argues that the trial court's ruling admitting this evidence violated his right to a fair trial, as guaranteed by part I, article 15 of the New Hampshire Constitution. However, Fecteau did not specifically raise this State constitutional issue below, and thus we will address it only as an evidentiary matter. *See State v. Dellorfano*, 128 N.H. at 632, 517 A.2d at 1166.

We recently articulated in *State v. Gruber*, 132 N.H. 83, 88, 562 A.2d 156, 159 (1989), that there is a

"three-pronged test to determine the admissibility of prior offense or bad act evidence under Rule of Evidence 404(b). . . . '[T]he decision to admit such evidence lies within the sound discretion of the trial court upon a determination that the evidence is relevant for a purpose other than character or disposition, that there is clear proof that the defendant committed the prior offenses,' . . . and that the prejudice to the defendant does not substantially outweigh the probative value of the evidence . . . ."

*Id.* There appears to be no dispute that the first two prongs of the test are met. The State wished to introduce evidence of the burglary arrest in order to explain why the Dover police focused on Fecteau in the first case. Thus, the evidence was "relevant for a purpose other than character or disposition . . . ." Second, "there was clear proof that the defendant committed the prior offense"; he was convicted on that burglary charge, and this conviction was upheld on appeal. *State v. Fecteau*, 132 N.H. 646, 568 A.2d 1187.

It is the third prong of the test, concerning the prejudice/probative value evaluation, that Fecteau argues has not been met. More specifically, Fecteau argues that nothing in defense counsel's opening statement warranted a change in the court's original determination that the prejudicial effect of the evidence of the burglary arrest outweighed its probative value. In particular, Fecteau focuses on what he argues was the trial court's faulty memory of defense counsel's statement that the police "came into contact with [Fecteau] through their investigation of an unrelated matter . . . ." Thus, Fecteau argues that, but for the trial court's erroneous recollection, the court

would not have had justification for reversing its Rule 404(b) ruling. We disagree.

■■ First, defense counsel's words, "came into contact with [Fecteau] through their investigation of an unrelated matter," could lead a jury to believe that Fecteau was not himself being investigated, and that no connection existed between the "unrelated matter" and the first assault case. Second, defense counsel's opening statement was rife with suggestions that the Dover police had no good reason for focusing their investigation on Fecteau. The court's previous Rule 404(b) ruling left the State with no way of rebutting these allegations. Thus, we find that the trial court properly ruled that the prejudicial effect of evidence of the burglary arrest no longer outweighed its probative value. Defense counsel, in a sense, "opened the door" to testimony from police officers explaining their reason for focusing their investigation on Fecteau.

> "Opening the door occurs 'when one party introduces evidence that provides a justification beyond mere relevance for an opponent's introduction of otherwise inadmissible evidence.' By means of this mechanism, 'a misleading advantage may be countered with previously suppressed or otherwise inadmissible evidence.'"

*State v. Sullivan*, 131 N.H. 209, 213, 551 A.2d 519, 522 (1988).

A review of the record shows that the trial court carefully tailored the effect of admitting evidence of the July 16, 1987 burglary arrest by admitting only enough evidence to explain why the police focused on Fecteau and thus rebut the allegations made by defense counsel in her opening statement. In addition, the court cautioned the jury not to consider this evidence in its determination of Fecteau's case. We find no error.

## IV. *Witness Transportation Fees*

On the third day of trial, Fecteau moved the court to provide $1200 for the transportation of Theresa Fecteau, the defendant's then wife, from Texas to New Hampshire. Defense counsel explained that, although Theresa Fecteau had been communicating with her husband, she had only recently contacted counsel and told counsel that she would be willing to testify. Defense counsel did not know Theresa Fecteau's address or telephone number, and neither Theresa Fecteau nor Gary Fecteau could afford the plane fare. While defense counsel argued that Theresa Fecteau might be called "on the issue of iden-

tity," she told the trial court that she was not sure she would actually call Theresa Fecteau as a witness.

The prosecutor objected to defense counsel's motion, and the trial court denied the request, terming it "outrageous." The court stated, "First of all, you've not convinced me she's a necessary witness, so necessary that this trial should be disrupted and interrupted for her to be here; and, number two, this case has been pending for two years or more."

On the fourth day of trial, defense counsel asked the court to reconsider its decision, and stated that Theresa Fecteau might be able to testify as an alibi witness. The court denied the request, stating:

"[For] the reason of unnecessary state expense being incurred here, and the fact that her testimony could have been preserved for this trial at a fraction of the cost, with the slightest diligent efforts from the time this trial has started, I'm exercising my discretion that justice and equity does not require her presence here in order for me to order, at state expense, for her to be here, especially in light [of] the fact that [defense counsel doesn't] know what she's going to say and we don't really know whether she can be here or not."

Defense counsel again asked for reconsideration on the fifth day of trial, and the trial court once more denied it.

 On appeal, Fecteau argues that the trial court's ruling denied him his right "to produce all proofs that may be favorable to himself . . . ," as guaranteed by part I, article 15 of the New Hampshire Constitution. We disagree.

In *State v. Campbell*, 127 N.H. 112, 115, 498 A.2d 330, 332 (1985), we stated that, to win an appeal on this issue,

"a defendant must demonstrate by reference to the facts and circumstances of his particular case that the assistance he seeks is necessary 'to insure effective preparation of [his] defense by [his] attorneys.' . . . [N]ecessity may be found if the [witness] would advise or testify on a matter directly in issue."

The defendant has failed to meet this test. While it is possible that Theresa Fecteau would "testify on a matter directly in issue," such as identity or alibi, defense counsel stated that she did not know whether she would even call her as a witness. Moreover, defense counsel made no offer of proof as to what Theresa Fecteau would say if she were called as a witness. Thus, the defendant did not make any

showing that transporting his wife at State expense was "necessary 'to insure effective preparation of [his] defense by [his] attorneys.'" *Id.* The trial court did not err in denying Fecteau's motion for transportation fees.

*Affirmed.*

THAYER, J., did not sit; the others concurred.