Rockingham
No. 89-342

THE STATE OF NEW HAMPSHIRE

v.

VINCENT GIORDANO

November 6, 1991

*John P. Arnold*, attorney general (*Tina L. Nadeau*, attorney, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

HORTON, J.   The defendant, Vincent Giordano, was convicted by a jury in Superior Court (*Mangones*, J.) of three burglary charges, RSA 635:1, I, and acquitted on a fourth. On appeal, the defendant argues that the trial court erred in sentencing him without benefit of a presentence report, as required by RSA 651:4, I, and in denying his motion to sever the fourth burglary charge from the remaining three. For the reasons that follow, we affirm.

At 1:44 a.m. on December 22, 1987, while responding to a silent alarm from a professional building, Derry police officers saw the defendant crawl out of one of the building's windows. A search of the defendant conducted later at the police station incident to his arrest revealed $500, which was hidden inside the lining of his jacket sleeve, two keys to a typewriter case, several one-dollar bills, which were stained with dye, and two sales receipts from Ames department store, which reflected the purchase of a crowbar, carpet tape, rope, and a man's wool hat.

A search of the building disclosed that several alarms had been torn from the walls and that holes had been cut in three of the doctors' office doors. A circular saw covered with sawdust was found at the bottom of a staircase. Next to the saw was a flashlight, which the defendant later identified as his own. The police also found a seed bag from Heimlich's Nursery, containing an empty money bag, a garden tool, and two screwdrivers. At the top of the stairs, the officers found a crowbar with an Ames department store sticker on it, with inventory numbers matching those on one of the receipts found in the defendant's pocket, a wool hat with sawdust particles on it, and a typewriter in a typewriter case.

The next day, while still in jail, the defendant requested that the police retrieve some items which he had left behind Shaw's Supermarket, which is approximately one hundred yards from the burglarized offices and fifty to seventy-five feet from Heimlich's Nursery. Contrary to his claim that these items were recently purchased Christmas gifts, the items recovered by the police included a coffee pot identified as belonging to the nursery, more money bags, and an unopened package of nylon rope. The officers also observed that a nearby fence surrounding the nursery had been peeled back, and that a set of footprints led from the fence to an open window of the nursery. While retrieving the defendant's "belongings" from behind Shaw's, the police were dispatched to respond to a reported burglary at the nursery. Among the items reported missing were a seed bag and marked money.

Charged with burglarizing three doctors' offices and the nursery, the defendant represented himself during much of the trial, and told a different story as to how he came to be in the professional building. According to his testimony, he left work on December 21, picked up some money and Christmas gifts, and travelled to Manchester. Because of abdominal pain and rectal bleeding, he sought medical attention. He interrupted his cab ride to his doctor's office in Derry only in order to purchase a six-pack of beer. He then called the doctor's office located near the burglarized building, but was told that another doctor had taken over the practice. According to the defendant, after examining him the new doctor instructed him to go immediately to a hospital, but because he was unable to get a ride or a cab, he went shopping at the nearby shopping center. There he purchased and consumed more beer and vodka, hid his shopping packages, and fell asleep.

Upon waking, he discovered a bag containing the dyed money, a pair of boots, the coffee pot, the keys, and the money bags. He collected these items, put on the boots in place of his wet sneakers, and left the plaza. Walking by the professional building, he noticed that the window was open and, being cold and tired, climbed inside. Once inside, he discovered that holes had been cut in the doctors' office doors, and he entered one of the offices, hoping to find medication for his pain. An alarm sounded when he opened the door, causing him to suffer a seizure. When he saw the police, he started to go down to meet them, but slipped and fell down the stairway. He then crawled out the window and was arrested.

The jury, apparently disbelieving his version of the events, convicted him of two of the three burglary charges resulting from the break-ins at the doctors' offices, and of the charge of burglary of Heimlich's Nursery. This appeal followed.

The defendant argues that the trial court erred when it sentenced him without first obtaining a complete presentence report, which he had requested by motion and which was also required by RSA 651:4. The State contends that this issue was not properly preserved for appellate review and that, even if it were, the extensive written materials available to the sentencing judge "substantially complied" with the requirements of RSA 651:4.

■ It is well settled in this State that a contemporaneous and specific objection is required to preserve an issue for appellate review. *State v. Menard*, 133 N.H. 708, 710, 584 A.2d 752, 754 (1990); *State v. Wisowaty*, 133 N.H. 604, 607, 580 A.2d 1079, 1080–81 (1990).

Although the defendant filed a motion requesting the preparation of a presentence report, which the court granted, neither the defendant acting pro se nor his counsel, who represented the defendant for certain portions of the sentencing hearing, ever objected to proceeding to sentencing without a presentence report. This court has previously held that "[t]he time to object to any perceived irregularities in the sentencing procedure [is] at the sentencing hearing." *Roy v. Perrin*, 122 N.H. 88, 100, 441 A.2d 1151, 1159 (1982). In the circumstances of this case, however, we determine that no further action on the defendant's part was necessary to "afford[ ] the trial court an opportunity to correct an error it may have made." *State v. Nadeau*, 126 N.H. 120, 125, 489 A.2d 623, 626 (1985). Consequently, we hold that this issue has been properly preserved.

RSA 651:4, I, states in part: "No person convicted of a felony shall be sentenced before a written report of a presentence investigation has been presented to and considered by the court, unless waived by defendant and the state." Contrary to waiving his right to receive a presentence report, the defendant filed a motion specifically requesting one. In granting the defendant's motion, the trial court ordered "the Department of Corrections . . . to prepare an expedited pre-investigation report at its very earliest convenience." No report was ever prepared, however, and the trial court noted at the sentencing hearing that "[defendant's counsel] eloquently put forward a request for a presentence investigation which, for the record, has come to naught." On the facts of this case, because the trial court granted the defendant's motion requesting a presentence report, and because it noted on the record of the sentencing hearing both the request for the report and the fact that none had been prepared, the defendant fulfilled his obligation to inform the trial court of any perceived irregularities in the sentencing procedure.

The fact that no presentence report was prepared is not a fatal flaw, however, if the materials that were available to the trial court at sentencing "substantially complied with" the requirements of RSA 651:4, I. *Roy v. Perrin, supra* at 99–100, 441 A.2d at 1158–59. RSA 651:4, I, does not define the form the presentence report must take. In the present case, the trial court reviewed lengthy documentation regarding the defendant's social and psychological history. Copies of the defendant's criminal records from four different States were provided by the probation department. In addition, the defendant submitted developmental reports of his life, a psychological evaluation, and letters from social workers. Further, because the

sentencing judge also presided over the trial, he had detailed knowledge of the underlying offense. Consequently, we hold that there was substantial compliance with the requirement of RSA 651:4, I, that a presentence report be available to the trial court and, therefore, find no error in the sentencing procedure.

The defendant further argues that the trial court erred in denying his motion to sever the charges of burglary at the professional building from the charge involving Heimlich's Nursery. Specifically, he asserts that because he wanted to testify about the doctors' office burglaries but did not want to testify about the nursery burglary, severance was required.

■■ This court will not disturb a consolidation ruling on appeal unless the defendant can establish an abuse of discretion. *State v. Fecteau*, 133 N.H. 860, 869, 587 A.2d 591, 596 (1991). In assessing the propriety of consolidation in the circumstances of the defendant's specific claim of prejudice, we must determine whether the defendant has made "'a convincing showing that he ha[d] both important testimony to give concerning one count and strong need to refrain from testifying on the other[s].'" *State v. Manna*, 130 N.H. 306, 310, 539 A.2d 284, 286–87 (1988) (quoting *Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir. 1968)).

■ The defendant made a convincing showing that he had important testimony to give concerning the charges resulting from the burglary at the professional building. Because he was arrested climbing out of one of the building's windows, some explanation for his presence was appropriate. We disagree, however, with the defendant's contention that he had a compelling need to refrain from testifying on the nursery burglary charge. In making the showing required by *Manna*,

> "it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying."

*Baker v. United States*, 401 F.2d at 977. The defendant failed to meet his burden in this case, because he offered *no* evidence to the trial court to support his naked assertion that "he would not be testifying

if [the nursery burglary] charge were severed." On the contrary, the evidence against the defendant warranted some explanation. A Heimlich's Nursery seed bag was recovered from the professional building, which the defendant had just exited, and marked money, missing from the nursery, had been seized from the defendant. He was wearing boots similar to those which had made tracks in the snow leading to an open nursery window. A coffee pot taken from the nursery was found in the defendant's belongings behind Shaw's. Consequently, the defendant's assertion that his best defense, given this incriminating evidence, was "not to testify and argue that the State's evidence was insufficient," is not compelling.

Moreover, the defendant has not shown that joinder of the charges prejudiced him. Here, his defense to the charges was consistent and did not put him in a position of inculpating himself on one charge, while exculpating himself on the others. *See Baker v. United States*, 401 F.2d at 974 (prejudice may occur where defendant may become embarrassed or confounded in presenting separate defenses); *Romans v. Commonwealth*, 547 S.W.2d 128, 131 (Ky. 1977) (prejudicial joinder where defenses mutually inconsistent). Nor did the State introduce, for purposes of impeachment, any prejudicial evidence to which the defendant "opened the door" by taking the witness stand. *See, e.g., State v. King*, 187 Conn. 292, 308, 445 A.2d 901, 909 (1982). Accordingly, we hold that the defendant did not satisfy his burden of showing a compelling reason for abstaining from testifying regarding the Heimlich's Nursery charge and that the trial court did not, therefore, abuse its discretion in denying severance.

*Affirmed.*

All concurred.