Strafford
No. 94-273

THE STATE OF NEW HAMPSHIRE

v.

GARY FECTEAU

December 6, 1995

*Jeffrey R. Howard,* attorney general (*John C. Kissinger, Jr.,* assistant attorney general, on the brief and orally), for the State.

*McLaughlin, Hemeon & Lahey, P.A.,* of Laconia (*Philip T. McLaughlin* on the brief and orally), for the defendant.

BROCK, C.J. The defendant appeals from the Superior Court's (*Nadeau,* C.J.) denial of his motion for a new trial. We affirm.

After a jury trial in Superior Court (*Nadeau,* J.), the defendant was convicted of one count of aggravated felonious sexual assault, *see* RSA 632-A:2 (1986 & Supp. 1990), one count of attempted aggravated felonious sexual assault, *see* RSA 629:1 (1986), and two counts of burglary, *see* RSA 635:1 (1986 & Supp. 1990). On direct appeal from those convictions, he argued that certain identification procedures employed by the police violated the State and Federal Constitutions, that the trial court erred in admitting evidence of his arrest for a similar offense, and that the trial court erred in denying his request for funds to transport an out-of-state witness. In *State v. Fecteau,* 133 N.H. 860, 587 A.2d 591 (1991), we concluded that the identification procedures were not unnecessarily suggestive, *id.* at 867-68, 587 A.2d at 595; that certain remarks included in his trial counsel's opening statement "opened the door" to the admissibility of evidence of the defendant's arrest on a similar burglary charge, *id.* at 874, 587 A.2d at 599; and that the defendant failed to demonstrate that the out-of-state witness, his former wife, was a necessary witness, *id.* at 875-76, 587 A.2d at 599-600.

The defendant's subsequent motion for a new trial, alleging ineffective assistance of counsel and newly discovered evidence, was denied by the trial court after a hearing. On appeal, the defendant asserts that his trial counsel was ineffective because she (1) opened the door to the admissibility of evidence otherwise inadmissible under New Hampshire Rule of Evidence 404(b) by remarks in her opening statement, (2) failed to present exculpatory evidence, and (3) failed to present the testimony of his former wife. He also argues that the trial court abused its discretion when it denied his motion to bifurcate the hearing on his motion for a new trial geographically

and temporally so as to facilitate his presentation of new evidence. The newly discovered evidence he offers is an affidavit from a former Dover Police Officer relating to the legality of the identification procedures used during the Dover Police investigation of the defendant.

## I. Ineffective Assistance of Counsel

The defendant bases his claim of ineffective assistance of counsel on part I, article 15 of the New Hampshire Constitution and on the sixth and fourteenth amendments to the United States Constitution. We will address the question under the State Constitution independently, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), referring to federal cases only for their assistance in analyzing the State issue. *State v. Glidden*, 127 N.H. 359, 361, 499 A.2d 1349, 1350 (1985). Because the State Constitution provides the defendant at least as much protection as does the Federal Constitution in this area, *State v. Sanchez*, 140 N.H. 162, 163, 663 A.2d 629, 630 (1995), we need not conduct a separate federal analysis. *See Lockhart v. Fretwell*, 506 U.S. 364 (1993).

The State Constitution entitled the defendant to the "reasonably competent assistance of counsel" at his trial. *State v. Matiyosus*, 134 N.H. 686, 687, 597 A.2d 1068, 1069 (1991). To demonstrate a violation of this right, the defendant must show that his trial "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *State v. Anaya*, 134 N.H. 346, 351, 592 A.2d 1142, 1145 (1991) (quotation omitted).

> This test contains two prongs: the defendant must show that his attorney's performance was deficient, or not reasonably competent, and that the deficient performance resulted in actual prejudice to the outcome of the defendant's trial. This actual prejudice must rise to such a level that there is a reasonable probability that the result of the proceeding would have been different. If the defendant is unable to demonstrate such prejudice, we need not even decide whether counsel's performance was deficient.

*Sanchez*, 140 N.H. at 163, 663 A.2d at 630 (citations, quotations, brackets, and ellipses omitted). When we review the performance of trial counsel, we begin with a "strong presumption that counsel's conduct falls within the limits of reasonable practice[,] bearing in mind the limitless variety of strategic and tactical decisions that counsel must make." *State v. Chase*, 135 N.H. 209, 212, 600 A.2d 931, 933 (1991) (quotation and ellipsis omitted).

The defendant first contends that his trial counsel was ineffective because she "opened the door" to the admissibility of evidence relating to his arrest on similar charges after the commission of the crimes in the instant case, but before his trial. Prior to trial, the court ruled that evidence of the defendant's arrest and conviction for burglary, the underlying facts of which were very similar to the charged acts in this case, would be excluded. *See Fecteau*, 133 N.H. at 873-74, 587 A.2d at 598-99; *State v. Fecteau*, 132 N.H. 646, 568 A.2d 1187 (1990). In her opening statement, however, trial counsel referred to the difficulty encountered by the local police in investigating the crimes, which resulted in their temporary suspension of the investigation, and then stated:

> The issue in this case is how [the defendant] ever came to be charged with these crimes. Before he was arrested for these crimes, he had never, never met [either of the victims]; never had any contacts with them. The real issue in this case is the way in which the police made up their mind about the guilt of [the defendant].
>
> . . . .
>
> So at this point, the police had no leads. What they were left with was no clear description of the man and no composite. And you will hear that a few weeks later, the case was suspended because there were no leads and there were no suspects.
>
> Several weeks after the case was suspended, the Dover Police *came into contact with [the defendant] through their investigation of an unrelated matter.* And they began to try [to] build a case against him on this case. . . . You will hear that one of the officers put together a photographic lineup that included [the defendant's] photo, and at that point, the case was reopened.

(Emphasis added.)

As we discussed in the defendant's direct appeal, the emphasized remarks opened the door to the admissibility of the defendant's burglary arrest. *Fecteau*, 133 N.H. at 874, 587 A.2d at 599. The record discloses that the trial court carefully circumscribed the admissibility of this evidence, and gave an instruction which cautioned jurors not to consider the evidence in their consideration of the defendant's guilt of the charged crimes. *Id.*

In *Grote v. Powell, Commissioner*, 132 N.H. 96, 562 A.2d 152 (1989), we declined to entertain a collateral challenge to a trial court

decision to admit evidence under the guise of an ineffective assistance of counsel claim where the admissibility of the evidence had been litigated fully on direct appeal. *Id.* at 100-01, 562 A.2d at 154-55. The instant case differs from *Grote*, however, in that the defendant contends that the evidence was admitted *because* of his trial counsel's conduct. The issue here was not litigated fully on direct appeal. *See Humphrey v. Cunningham, Warden*, 133 N.H. 727, 733, 584 A.2d 763, 766 (1990).

■ In its order on the instant claim, the trial court characterized trial counsel's decision to "take full advantage of the court's pretrial rulings by portraying the defendant in a most favorable light" to be "a calculated risk falling within the limits of reasonable practice." We agree. Further, the court gave a limiting instruction to the jury, instructing it not to consider the evidence in determining the defendant's guilt. *See Fecteau*, 133 N.H. at 874, 587 A.2d at 599; *State v. Perron*, 122 N.H. 941, 949-50, 454 A.2d 422, 426-27 (1982) (holding counsel was not ineffective for making tactical decision to present character evidence in favor of the defendant which opened the door to State's presentation of evidence of defendant's bad character, especially when limiting instruction mitigated any potential prejudice). We also agree with the trial court's conclusion that even if the evidence had not been admitted, the verdict would not have been affected. *See Sanchez*, 140 N.H. at 163–64, 663 A.2d at 630; *State v. Wisowaty*, 137 N.H. 298, 308, 627 A.2d 572, 578 (1993).

■ The defendant next contends that his trial counsel was ineffective in failing to take adequate steps to ensure the presence and testimony of his then wife, Theresa Valmores. We conclude that the trial court's ruling on this issue, that Valmores' testimony would have been "speculative" and "cumulative," is amply supported by the record. Further, we agree with the trial court that "any advantage of [her] testimony would have been overshadowed by the damaging revelations of [her] clouded history with the defendant." The defendant fails to demonstrate any prejudice from the absence of Valmores' testimony at trial. *See Sanchez*, 140 N.H. at 163–64, 663 A.2d at 630.

■ As a third basis for his ineffective assistance of counsel claim, the defendant asserts that his trial counsel was not diligent in preparing for the presentation of certain hair evidence. The evidence consisted of a Federal Bureau of Investigation report indicating that pubic and head hair found on the sheet upon which one of the victims had been raped belonged to neither the defendant nor the victim. The defendant argues that trial counsel's failure to

prepare properly for certain State witnesses and her failure to explore fully this "exculpatory" evidence prejudiced the outcome of his trial. This contention is contradicted by the record in several respects.

First, trial counsel testified that she was fully aware of the qualifications of particular witnesses, and that she never intended to present the hair evidence. Even though the defendant testified otherwise, the trial court was free to reject his testimony. *See Chase*, 135 N.H. at 215, 600 A.2d at 935-36 (court will not overturn credibility rulings by trial court, which is in best position to make such determinations). Second, the defendant does not inform us how this evidence is exculpatory. This assault took place on the victim's *roommate's* bed. The presence of hairs that match neither the victim nor the defendant, therefore, is not surprising. Trial counsel testified that she described the evidence as carrying minimal importance and as non-exculpatory. *See Wisowaty*, 137 N.H. at 306, 627 A.2d at 577 (assistance of counsel not ineffective where counsel did not move to dismiss after State lost certain evidence, where evidence was not exculpatory). The trial court agreed, concluding that it would not "second-guess" trial counsel's judgment regarding the utility of evidence. We find no error in this conclusion. The defendant has failed to demonstrate that trial counsel's actions with regard to the hair evidence was deficient or that his case was prejudiced by this alleged error. *See Sanchez*, 140 N.H. at 163–64, 663 A.2d at 630.

## II. Motion to Bifurcate Hearing

The defendant finally contends that the trial court should have bifurcated the hearing on the instant motion in order to facilitate the testimony of former Dover Police Officer Philip Stinson. In a 1993 affidavit, Stinson described how our conclusion that the identification procedures used by the Dover Police were not unnecessarily suggestive was erroneous. *See Fecteau*, 133 N.H. at 867-69, 587 A.2d at 595-96. Specifically, Stinson stated that an encounter between the defendant and the two victims that occurred outside the Dover District Court was not "plainly accidental," as we described it, *id.* at 867, 587 A.2d at 595, but rather was carefully orchestrated by a member of the Dover Police Department. Just prior to the hearing on the defendant's present motion, Stinson wrote a letter to the presiding judge stating that his safety would be compromised were he to appear in Strafford County, and requesting certain protections before he would appear in the matter. The requested protections included twenty-four hour armed security while in New Hampshire, an order prohibiting members of the

Dover Police from having any contact with him, and that the hearing be held outside of Strafford County. Based upon this letter, the defendant moved to bifurcate the hearing to accede to Stinson's request. The Superior Court (*Nadeau*, C.J.) denied the motion after a telephone hearing.

The trial court has inherent power to control every aspect of the proceeding before it. *State v. LaFrance*, 124 N.H. 171, 180, 471 A.2d 340, 345 (1983). For this reason, a trial judge "has the authority to determine the manner and procedure by which a case will be tried, except where limited by statute, court rule, or constitutional fiat." 2 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 822, at 236 (1991).

It is for this basic reason that we will not reverse a trial court's ruling regarding the conduct of the trial unless the court has abused its broad discretion. *E.g., State v. Weir*, 138 N.H. 671, 674, 645 A.2d 56, 57 (1994) (decision to disqualify juror); *State v. Giordano*, 138 N.H. 90, 94, 635 A.2d 482, 484 (1993) (denial of mistrial motion); *Nat'l Marine Underwriters v. McCormack*, 138 N.H. 6, 8, 634 A.2d 1008, 1010 (1993) (decision on motion to amend pleadings); *State v. Jaroma*, 137 N.H. 562, 571-72, 630 A.2d 1173, 1179 (1993) (decision whether to grant continuance). The defendant has presented no evidence that the trial court's decision constituted such an abuse.

The trial court did not preclude Stinson from testifying. The court's order merely declined to accede to Stinson's specific requests for protection, concluding that

> adequate precautions could have been provided for Mr. Stinson to be here at Strafford County . . . . [H]e could have stayed in a motel in Massachusetts; he could have had somebody drive him to this court and testify and drive right back to Massachusetts. I don't think there's any credible evidence that his personal safety is at risk by his coming here to Strafford County to testify.

The trial court expressly left open the possibility that the defendant could renew his motion on this ground if he "produces any other affidavit under oath by any other [Dover Police] officer . . . that in any way substantiates Mr. Stinson's allegations, along with an expressed willingness to appear voluntarily at a hearing." The defendant has demonstrated no abuse of discretion in this decision.

*Affirmed.*

THAYER and BRODERICK, JJ., did not sit; BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all who sat concurred.